[No. 15160.    Department Two.    April 14, 1919.]

MARY E. CONNELLY et al., Respondents, v.
JAMES J. MALLOY, Appellant.[1]

VENDOR AND PURCHASER (44, 55)—RESCISSION BY AGREEMENT OF PARTIES. A sale of a farm was mutually rescinded, where the vendees, shortly after taking possession, became dissatisfied and requested a rescission, whereupon the vendor surrendered notes given for the balance of the purchase, voluntarily moved them off the premises and took exclusive possession, although he refused to return $1,000 paid by them, it appearing that he had a claim for recoupment damages that was then unsettled, and probably intended to return part of it.

SAME (50, 74)—RESCISSION—REMEDIES OF VENDEE—RECOVERY OF PRICE. Upon a mutual rescission of a contract for the sale of land which contained no provision for a forfeiture of sums paid, the vendee is entitled to recover the sum paid on the purchase price, less any damages sustained by the vendor because of the failure of consummation of the sale.

PLEADING (163)—ELECTION BETWEEN CAUSES. In an action by a vendee to recover purchase money paid, on a mutual rescission of a sale, in which but a single recovery is sought, there is no mis-

[1]Reported in 180 Pac. 469.

joinder of causes of action in basing the relief upon the three grounds of fraud, failure of performance, and mutual agreement to rescind, and it is not error to refuse to require an election.

VENDOR AND PURCHASER (158)—RESCISSION—REMEDIES OF VENDOR —RECOUPMENT OF DAMAGES. Upon the mutual rescission of a contract for the sale of a farm, the vendor is entitled to recoupment damages sustained by reason of loss of use of the farm, and by his inability, while the farm was in possession of the vendees, to do the necessary fall work.

PLEADING (101)—AMENDMENTS—DISCRETION. It is discretionary with the trial court to allow a trial amendment to an answer setting up items of damages which the defendant was entitled to recoup.

CHADWICK, C. J., dissents.

Cross-appeals from a judgment of the superior court for Okanogan county, Neal, J., entered April 8, 1918, upon awarding damages on the rescission of a sale of lands. Affirmed.

*Grant & Williams,* for appellant.
*Johnson & O'Connor,* for respondents.

PARKER, J.—The plaintiffs, Mary and James Connelly, sister and brother, seek recovery of the sum of $1,000 from the defendant Malloy, which they paid to him as a part of the purchase price of his farm, situated in Okanogan county, claiming that the contract which they entered into with him for the purchase price of the farm has been rescinded for good cause on their part, and by his and their mutual consent. Trial in the superior court for that county resulted in findings and judgment in favor of the plaintiffs, awarding them recovery of the $1,000, less the sum of $200, awarded to the defendant as recoupment damages, resulting to him from the transaction and the failure of the consummation of the sale. The defendant appealed from this disposition of the case, and thereafter the plaintiffs appealed therefrom.

On September 8, 1916, Malloy, as party of the first part, and the Connellys, as parties of the second part, entered into a written contract for the sale of the farm and personal property thereon, which, in so far as we need here notice its terms, reads as follows:

"And the parties of the second part agree to purchase said real estate and personal property from the first party and to pay therefor the sum of $7,500, at the times and in the manner as follows: One thousand dollars cash contemporaneous with the execution of this instrument, the receipt whereof is hereby acknowledged; and three thousand dollars within sixty days after the date the first party has furnished the second party with an abstract showing said title to be clear and merchantable, except Hamisch mortgage, and to execute at the time the said abstract is furnished showing said title clear and merchantable two notes for $1,750.00 each, one payable on or before three years after date, and one note due on or before five years after date.

"It is further agreed by and between the parties hereto, that the first party is to execute and deliver to E. A. Williams, a warranty deed and bill of sale of the above described real and personal property, to be held by him in escrow to be delivered by him to the second parties upon their compliance with this agreement.

"It is further agreed by and between the parties hereto, that the second parties will execute and deliver said notes for $3,500.00 to E. A. Williams to be held in escrow by him, to be delivered to the first party as soon as the title to said land is found to be clear and merchantable, and at the same time the said deed and bill of sale are delivered to the second party. . . .

"This contract is to be left with the deed, bill of sale, notes, and mortgages in escrow in the hands of E. A. Williams."

There was no forfeiture or other provision in the contract referring to or controlling in any respect the rights of either of the parties as against the other, in

case of failure of performance or in case of rescission of the contract for any cause. On the day of the entering into the contract, the Connellys paid to Malloy $1,000 upon the purchase price of the farm and executed the notes, which were left with Williams in escrow with the other papers, as agreed upon. Soon thereafter, the Connellys moved into the house upon the farm, where they resided with Malloy until the rescission of the contract occurred. On November 1, 1916, or shortly prior thereto, the Connellys informed Malloy, in substance, that they desired to rescind the contract, have him keep the farm and personal property, and return to them the $1,000 paid upon the purchase price. This was at a time when the Connellys were not in default as to the $3,000 installment to be paid upon the purchase price, since the sixty days for the payment thereof had not expired. Malloy then told the Connellys, in substance, that they might go to Williams and get their notes, which had been left with him in escrow, but that he, Malloy, would not return the $1,000. Malloy then moved the Connellys off the farm to a neighbor's, with whom they had been stopping prior to the making of the contract, using his team and wagon for that purpose, and thereupon resumed exclusive possession of the farm and personal property, which he has retained ever since. There was thus left unsettled between them only the question of the right of the Connellys to have the $1,000 theretofore paid upon the purchase price, or some portion thereof, returned to them. These, in substance, are the facts found by the trial court; and we think such findings are well supported by the evidence.

The Connellys being unable to induce Malloy to return the $1,000, or any portion thereof, in May,

1917, commenced this action, seeking its recovery. In their complaint they seek such recovery upon three grounds: (1) Upon the ground of false representations made by Malloy, inducing them to enter into the contract; (2) upon the ground of failure on the part of Malloy to furnish an abstract, showing good title in him, as agreed upon; and (3) upon the ground that the contract had been rescinded by mutual consent of all of the parties thereto. These grounds, as pleaded in the complaint, counsel for Malloy insists, constitute three causes of action, though they were all relied upon by the Connellys to effect a single recovery of the $1,000. The ground of false representations inducing the Connellys to enter into the contract, and the failure of Malloy to furnish an abstract, as agreed upon, apparently were not claimed by the Connellys as grounds for the rescission of the contract in their talk with Malloy at and prior to November 1, 1916; but these grounds are claimed by them to have then existed, entitling them to rescind the contract. The trial court awarded judgment upon the theory that there was a mutual rescission of the contract on November 1, 1916, entitling the Connellys to have the $1,000 returned to them, less recoupment damages resulting to Malloy from the Connellys occupying the premises, and the terms of the contract, inducing him to refrain from doing the necessary fall work upon, and attending to the necessary affairs of, the farm, which he would have done and attended to during their occupancy of the premises but for his reliance upon the contract, as he had a right to do, before the time of its rescission.

It is contended in behalf of Malloy that the Connellys have no right to the return of any portion of the $1,000 paid upon the purchase price, because the

contract was rescinded at their instance. The argument seems to be that the Connellys are in the same position as they would have been if they had abandoned the premises and the contract, without good cause, and without acquiescence in the abandonment by Malloy. Whatever their rights would have been under such an abandonment of the premises and the contract, we think, from the fact that Malloy acquiesced in the Connellys' requested rescission of the contract, as we think he did by voluntarily taking them off the place, assuming exclusive possession thereof, and telling them to go to Williams and get the notes, that he thereby placed himself in a position where he cannot now rightfully claim that there was such an abandonment of the farm and the contract by the Connellys as to deprive them of the right to have the $1,000, or some portion thereof, returned to them. We are to remember that there were no terms in the contract, either of forfeiture or of any other nature, defining the rights of the parties with reference to the $1,000 paid upon the contract in case of failure of performance or rescission. We also note that the evidence tends strongly to show that Malloy, at the time of the rescission of the contract, intended to pay back to the Connellys some portion of the $1,000, after deducting the loss he had suffered by reason of his reliance upon the contract before its rescission. His admissions thereafter made, as testified to by apparently disinterested witnesses, point to this conclusion. In *Jones v. Grove*, 76 Wash. 19, 135 Pac. 488, Judge Main, speaking for the court, said:

"Where a contract for the sale and purchase of real estate has been rescinded, the law restores each of the parties to his original status. The vendor is entitled to the possession of the property if it has not already been restored to him, the rent if any, and

damages for the breach. The purchaser has a right to the refund of the money paid under the contract, together with interest. *Maffet v. Oregon & C. R. Co.,* 46 Ore. 443, 80 Pac. 489; *Bernardo v. Soderman,* 19 Cal. App. 161, 124 Pac. 866; *Pedley v. Freeman,* 132 Iowa 356, 109 N. W. 890, 119 Am. St. 557; *Lytle v. Scottish American Mortgage Co.,* 122 Ga. 458, 50 S. E. 402.''

This was said with reference to a sale contract which did not contain any forfeiture or other provision controlling the rights of the parties upon failure of performance or rescission. This view of the law was adhered to in *Jackson v. White,* 104 Wash. 643, 177 Pac. 667. We are of the opinion that the Connellys became entitled to the return of the $1,000 paid upon the purchase price, less such recoupment damages as Malloy might be able to show he suffered, growing out of the transaction because of the failure of the consummation of the contemplated sale of his farm; and that it simply became a question of restoring the parties as near as possible to the position they were in at the time of the making of the contract.

Contention is made in behalf of Malloy that the trial court erred in refusing to require counsel for the Connellys to elect as to which of the three grounds pleaded in the complaint they would base their claim of recovery upon. The motion to this effect was rested upon the theory that there were three causes of action pleaded, in substance, in the complaint, as above noticed; and that they were inconsistent. We have noticed that there was only the single recovery of the $1,000 which had been paid upon the purchase price sought by the Connellys. We are unable to see wherein the three grounds of recovery pleaded are inconsistent. Proof supporting any one of these grounds of recovery would not necessarily contradict proof

supporting either of the other grounds of recovery.
In *Starwich v. Ernst,* 100 Wash. 198, 170 Pac. 584,
Judge Fullerton, speaking for the court, well stated
the law, as follows:

"Separate and distinct acts, culminating in one re-
sult and giving rise to but one liability, do not require
statement in separate counts or make the doctrine of
election applicable. All can be united in one complaint
as one cause of action. Proofs may be admitted upon
all of them, and a recovery may be had if any one or
more are found to be proven. Any other rule would
amount to a denial of justice. It would be to compel a
plaintiff to elect between different grounds of liability
and, at his peril, pursue that one to the exclusion of
the others. Such is not the rule in this jurisdiction,
as we have several times announced. *Hutchinson v.
Mt. Vernon Water & Power Co.,* 49 Wash. 469, 95 Pac.
1023; *Bernot v. Morrison,* 81 Wash. 538, 143 Pac. 104,
Ann. Cas. 1916D 290; *O'Donnell v. McCool,* 89 Wash.
537, 154 Pac. 1090."

It seems quite plain to us that neither of these
grounds upon which recovery is sought is inconsistent
with either of the others. The trial court therefore
did not err in refusing to require an election, as asked
for by counsel for Malloy.

It is contended in behalf of the Connellys, upon their
cross-appeal, that the trial court erred in awarding to
Malloy $200 as recoupment damages. We do not find
in the record any timely exceptions made in behalf of
the Connellys to the court's finding that Malloy was
damaged in the sum of $200, growing out of his reli-
ance upon the contract after its making and prior to
its rescission. However, we are convinced by the evi-
dence, as the trial court was, that Malloy was so dam-
aged at least in that sum, as a direct result of the
existence of the contract, and his reliance thereon
prior to its rescission, as he then had a right to rely

upon it and act accordingly. The contention seems, however, to be directed more particularly against the several items of damage so claimed by him, as pleaded in the trial amendment to his answer, aggregating the sum of $1,560. It may be conceded that the larger portion of these items would, in no event, be recoverable by him. But we think that at least $200 of the amount so claimed was for items upon which he was entitled to damages by way of recoupment. For instance, by reason of his reliance upon the contract and the prospect of consummation of the sale, he refrained from hauling and placing upon the ground a large amount of fertilizer until it was too late in the fall to do that work. He also refrained from doing fall plowing until it was too late. He also refrained from doing a considerable amount of contemplated repairing upon the place, all of which he would have done to his advantage during the time the contract was in full force, had he not been relying thereon. He also suffered some damage by the breaking of his wagon by the Connellys. They had the use of the house as a home for the period they were there; and also some use of the horses which were upon the place. These are among the items of damages claimed by Malloy which we think he had a right to an award upon. The evidence is not very satisfactory as to the actual damage suffered by him, but it shows that he did suffer loss to the extent of $200, which he was entitled to have deducted from the $1,000 paid upon the purchase price.

Some contention is made that the court erred in allowing the amendment, during the trial, to Malloy's answer, setting up these items of damages, and claiming recoupment thereon. This was clearly a matter within the discretion of the trial court, which it seems

quite plain to us it did not abuse in allowing the amendment to be made.

The judgment is affirmed. Neither party will recover costs in this court.

MOUNT, FULLERTON, and HOLCOMB, JJ., concur.

CHADWICK, C. J. (dissenting)—To sustain the judgment rendered in this case the court must hold that there was a mutual rescission of the contract. That there was no' rescission seems to me to be too plain for argument. The holding of the majority is sustained by a finding that when the Connellys told Malloy they were going to leave the place he hauled them to a neighbor's in his own wagon and with his own team, and thereafter cared for the place and the stock that was on it. It is not made clear that he could have done other than he did. He could not restrain his vendees by force. If he had attempted to do so he would have been guilty of an assault. If he had permitted them, especially the lady, to walk down the big road he would have been rude. The farm and property, especially the live stock, had to be cared for. He did no more than prudence dictated and humanity demanded. In other words, he acted as a gentleman would, and must now pay a penalty for his politeness. This may be the law, but it does not consist with the rules of polite society.

I do not attach importance to the testimony of the Connellys that Malloy agreed that they might go to his attorneys and get their notes. It sustains rather than destroys appellant's case. They had abandoned the place and he was willing that they should receive their notes and that he should retain the $1,000 as liquidated damages. The fact that the Connellys moved off after this conversation is a circumstance

tending to show that, if there was a mutual rescission, it was upon the terms proposed.

The objection to the title was raised by counsel after the abandonment. It is no more than a pretense and a subterfuge and, besides, appellant had in law a reasonable time to meet the objections. The case should have been reversed and remanded with judgment for appellant in the sum of $1,000.