## HAYDEN et al. v. COLLINS.

No. 5349.   Decided October 16, 1934.   (37 P. [2d] 349.)

*Willard Hanson, A. H. Hougaard,* and *S. D. Huffaker,* all of Salt Lake City, for appellants.

*Leslie Frazer, of Washington, D. C.* and *T. W. Mackay,* of Salt Lake City, for respondent.

HARRIS, District Judge.

This is an appeal from a judgment in favor of the defendant and against the plaintiffs for $2,150, being the amount alleged to have been paid by defendant to the plaintiffs as a part of the purchase price for certain apartment house furniture and furnishings which contract the defendant alleged had been mutually rescinded by the parties. The pleadings are lengthy, and as there is practically no dispute in the evidence received at the trial, a brief summary of both pleadings and evidence will here be attempted.

On January 14, 1930, plaintiff Sam Hayden entered into a written agreement with the defendant Ada Collins by the terms of which the defendant leased from the plaintiff the Holland Apartments for a term of five years at $300 per month payable in advance on the 13th day of each month. In the same lease she agreed to purchase the furniture in the apartment as follows:

"The lessor agrees to sell and the lessee agrees to buy all of the furniture and furnishings of every name and nature in the said apartment house for the purchase price of $7000.00 to be paid at the rate of $75.00 per month with the rent of the apartment, interest at the rate of 7% per annum on all unpaid balance of the purchase price of furniture. Receipt of $2000.00 on this contract is hereby acknowledged."

The apartment house consisted of 22 furnished apartments, and the defendant upon entering into the agreement took possession of the same, collected the rents from tenants, and remained in such possession until May 8, 1930.

On May 2, 1930, plaintiff commenced this action in which he alleged that there was due under the contract, for March and April, $462.50 which defendant refused to pay, and asked for judgment that defendant had forfeited her rights in the premises and all parts thereof and that plaintiffs be restored to possession thereof. Plaintiff alleged that there was danger of loss and destruction of the property, etc., and asked for the appointment of Halloran-Judge Trust Company as receiver of the premises including the furniture and fixtures pending the outcome of the action. On the same day Halloran-Judge Trust Company was appointed and qualified as such receiver. At the trial the offer of the plaintiff to prove the receiver took possession of the property was objected to by defendant and sustained by the court. On May 8, 1930, defendant notified plaintiff she was leaving the premises, would pay no more thereon, and demanded a return of her money. Plaintiffs refused her request for the return of the money. Shortly after the defendant vacated the premises, the plaintiffs took possession thereof and the receiver resigned and was discharged by order of the court May 14, 1930.

On May 20, 1930, the defendant filed an answer admitting the execution of the contract, that she had not paid all payments due thereunder, and alleged a return of the property and demand for a return of her money paid on the contract. By way of counterclaim, she alleged the contract had been procured by fraudulent representations on the part of the plaintiff and Lyman-Callister Company, and asked that Lyman-Callister Company be made party defendant, and asked for a judgment rescinding the contract and that she recover judgment against plaintiffs and Lyman-Callister Company for $2,200. Lyman-Callister Company was made a party defendant and filed an answer denying the alleged fraud. Plaintiffs filed a reply also denying the alleged fraud.

On October 30, 1930, defendant entered into an agreement with Lyman-Callister Company whereby for a con-

sideration of $300 she released the defendant Lyman-Callister Company "from any and all liability by reason of the matters set forth in the cross-complaint," and pursuant to stipulation of counsel for Lyman-Callister Company and defendant the action was dismissed as to Lyman-Callister Company on its merits. Thereupon the plaintiffs filed their supplemental reply setting up the release of Lyman-Callister Company, that there was no written reservation of any cause of action against the plaintiffs, and that such release in effect was a release of all joint tort-feasors, including the plaintiffs.

On March 2, 1931, the case came on for trial. There was much informal discussion at the time between counsel, at which time it was stated that plaintiffs were willing to waive their claim for further affirmative relief and were willing to try the matter on the issue of whether or not plaintiffs had been discharged from liability on the counterclaim by reason of the discharge of the alleged joint tort-feasor. Evidence was taken on the issue of discharge, and the court remarked that unless there was a written reservation reserving the cause of action against the plaintiffs, the release of Lyman-Callister Company would release the plaintiffs. Defendant excepted to the ruling of the court and asked time to file an amended counterclaim, which was granted over the objection of plaintiffs.

Defendant then filed an amended answer and counterclaim in which she omitted Lyman-Callister Company as a party and setting up two counterclaims, one asking for a cancellation of the lease for alleged misrepresentations and fraud in procuring the contract, and the second alleging that because of the same fraud she had rescinded the contract to purchase the personal property and had returned the same to plaintiff, and asking for a return of money paid in the sum of $2,150 paid on the purchase price. Plaintiffs demurred and moved to strike these counterclaims, which demurrer and motion were overruled and denied, and then plaintiffs replied that defendant had impleaded Lyman-Cal-

lister Company and had alleged the same facts as a cause of action for fraud against plaintiffs and Lyman-Callister Company and had compromised and settled the case with Lyman-Callister Company for $300 and had dismissed the action against them on its merits; that the matters and things set forth in the amended counterclaim were the original matters and things pleaded in the original counterclaim; and that the matters had been heard before Hon. D. W. Moffat, District Judge, and had been determined by him in favor of the plaintiffs and against the defendant.

Thereupon the defendant dismissed her last two counterclaims and filed a second amended counterclaim in which she admitted the existence of the lease and agreement and alleged that defendant had elected to rescind the same; that she notified plaintiffs of such rescission; that on May 8, 1930, she delivered possession to the plaintiffs of all the furniture and furnishings; that the plaintiffs took possession "and that by reason of the conduct of the parties with respect to the subject matter of the said agreement for the sale and purchase of the said furniture and furnishings as hereinbefore alleged the said agreement was rescinded by mutual agreement of the parties thereto," and asked for a return of $2,150.

To this counterclaim plaintiffs again replied setting up the history of the litigation as in their previous reply, and again alleged that the issues in the case had been determined in favor of the plaintiffs and against the defendant, and setting forth that no such counterclaim as pretended to be set forth in the second amended counterclaim was pleadable as a defense of counterclaim in this action.

The case came on again for trial upon these new issues. The plaintiffs offered in evidence the original pleadings in the case and objected to any evidence on the part of the defendant on her counterclaim upon the grounds the same did not state a counterclaim pleadable in the action against the plaintiffs. Plaintiffs' offer and objection were denied and overruled and these rulings were assigned as error.

It is argued that the court erred in permitting defendant to so amend her counterclaim as to state a new and different cause of action and completely change her theory of her case. It is argued that a change from a counterclaim alleging a cause of action for fraud or in tort, to one of mutual rescission or in contract, is such a complete change of cause of action as well as theory of the case as may not be made by amendment.

It would appear that this matter has been determined by this court in favor of appellants in the case of *Combined Metals, Inc.,* v. *Bastian,* 71 Utah 535, 267 P. 1020, 1027, where the attempt was apparently made to make the same kind of amendment from a complaint to rescind a contract for fraud to one of mutual rescission. The court there says:

"The power of a court to permit an amendment of a pleading does not authorize an importation which in effect introduces a new or different cause of action."

The rule is laid down in 49 C. J. 507, as follows:

"The generally accepted rule is that an amendment cannot be permitted which sets up a new and distinct cause of action."

Counsel for the defendant admits that the second amended counterclaim states a new cause of action, but claims that the only way to object thereto was by way of motion to strike the same, and that no such motion was made here. The record discloses a motion to strike defendant's "second amended counterclaim," but this appears to have been filed on April 29, 1931, while the second amended counterclaim was filed May 4, 1931, and it is argued this motion to strike "can have no possible reference to the pleading under consideration." We do not feel called upon to untangle this apparent discrepancy in the record, because in this case there was objection to the court permitting the filing of the second amended counterclaim and later, by way of reply, plaintiffs set up that the matter stated therein was not properly plead-

able and also objected to introduction of any evidence in support of the same, and under these circumstances it would seem that plaintiff had not waived the admitted error because they filed their motion to strike too soon. However, since the case must be reversed for other reasons, it is not necessary to reverse the case on this ground, although the assignment of error in permitting the pleading to be so amended and filed appears to be well taken.

It is next contended that there was neither pleading nor evidence to justify the court entering judgment against plaintiff on the theory of a mutual rescission of the contract. At the trial the defendant testified that she signed the contract and a day or two later went into possession of the property; that a few days before May 8th she talked to plaintiff.

"Question by Mr. Frazer: Now, Mrs. Collins, you just tell the court what you said to Mr. Hayden that day you went to his store? A. Well, I went there to inform him I was leaving there, and told him I wanted the money back, and wasn't taking anything away from there; and I couldn't make Mr. Hayden listen to a thing. The furniture was of no value whatever to me, so I left everything just as it was when I came in possession of the place.

"Q. Did you tell him you didn't want the furniture? A. Sure I told him that.

"Q. Did you tell him you weren't going to pay anything more on it? A. Yes, sir.

"Q. Did you ask for your money back? A. Yes, sir.

"Q. What did he say? A. He refused everything.

"Q. Then you left his store? A. I left his store and he followed me down the aisle and jerked the door at my back like he was going to shove me out."

That after May 8th she never went back to the apartment, and that plaintiffs had never returned to her any part of the purchase price of the furniture. That plaintiffs took possession of the premises. Other witnesses were called to prove that shortly after May 8th plaintiffs took possession of the premises.

No accounting was offered for the value of the use of the property or rents collected while in defendant's pos-

session or for the $300 received from Lyman-Callister Company. At the conclusion of this evidence, the court awarded defendant judgment for the full amount paid on the purchase price.

It is conceded to be the general rule that whether or not there has been a mutual rescission of a contract is a question of fact to be determined from the evidence in a particular case. The defendant admits there is no evidence here of an express contract for mutual rescission and relies therefore exclusively upon the proposition that the plaintiffs took possession of the furniture without notifying the defendant they held it for her, and she contends that this is such conduct on the part of the parties as to bring the case within the rule announced in 2 Black on Rescission and Cancellation 1304, reading as follows:

"When goods have been delivered to the buyer under a contract of sale, and he returns them to the seller, and the latter accepts the redelivery, and resumes and retains possession of the property as his own, and does not notify the buyer that he intends to hold it subject to his order or sell it for his account, the transaction operates as a complete rescission of the contract of sale."

The cases cited by the author and by respondent here in support of the above were cases where the goods were so promptly returned by the buyer and accepted by the seller that the courts concluded that the fair inference from the evidence was that the parties agreed to a mutual rescission of the contract, or where the vendor took some action for affirmative relief when defendant was not in default and the vendor subsequently acquiesced in such action. While some of the cases seem to put much emphasis on the fact of the seller retaking possession of the property, it would appear that the better reasoning would be that the mere fact of repossession ought not to be conclusive evidence of an intention to rescind the contract. It is generally stated in the cases that in order for there to be a mutual rescission there must be a meeting of the minds of the parties as to both the fact of rescis-

sion and the terms thereof. It is frequently said that evidence of such agreement to rescind must be clear, positive, unequivocal, and inconsistent with the existence of the contract and that it is not enough to merely recognize that the purchaser has broken the contract and refused to proceed further with it. *Ross* v. *Tabor*, 53 Cal. App. 605, 200 P. 971, 975; *McLain* v. *Smith*, 201 Iowa 89, 202 N. W. 239; *Edwards* v. *Muri*, 73 Mont. 339, 237 P. 209; *Rayfield* v. *Van Meter*, 120 Cal. 416, 52 P. 666.

In the case of *Ross* v. *Tabor*, supra, the court denied the claim of mutual rescission under the facts somewhat similar to those in the case at bar. The California court in that case says:

> "And though the parties to a contract may abandon it by matter in pais, still the acts and conduct which may be relied on to constitute the abandonment must 'be clearly proved, and they must be positive, unequivocal, and inconsistent with the existence of a contract.' * * * In order to hold unto the contract as prospectively binding upon both parties, so that a right of action for damages might accrue to him on the expiration of the time for complete performance by respondent, it was not necessary that appellant should permit his property—his automobile and his bees—to continue abandoned and deprived of all suitable care."

In this case it would seem that the taking possession of the property by the plaintiff is entirely consistent with his relying on the contract. It is consistent with the theory that he was doing so to protect his property from loss and waste and thereby reduce or minimize the amount of damages he might have claimed in a suit against the defendant for a breach of the executory contract of sale. It was likewise consistent with the theory that he was doing so to protect his vendor's lien. R. S. Utah 1933, 81-4-3.

Here the defendant was in default on her monthly payments and a suit had been brought to cancel the contract for such default and for possession of the property, and a receiver appointed to take possession of the same. The defendant notified the plaintiffs that she was leaving the property and would not pay any more on the contract and

demanded a return of her money. The plaintiffs expressly "refused everything" offered by defendant by way of mutual rescission. It would appear that these facts more nearly bring this case within the rule laid down in *Rayfield* v. *Van Meter,* supra, where the court says:

"By these acts the vinculum juris arising from the contract was broken, and there was nothing which plaintiff needed to rescind. A buyer who without lawful excuse refuses to go forward with his contract is not entitled to recover back money paid on account thereof."

And in *Ketchum* v. *Evertson,* 13 Johns. (N. Y.) 359, 7 Am. Dec. 384, the court said:

"It would be an alarming doctrine, to hold, that the plaintiffs might violate the contract, and because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs have."

In the case of *Christensen et al.* v. *Hamilton Realty Co. et al.,* 42 Utah 70, 129 P. 412, 418, there was an express provision in the contract that taking possession of a house should constitute a waiver of claimed defects in the construction of the building by the contractor; this court declined to apply the provision, saying:

"If the owner, by taking possession and protecting his own property, under the circumstances disclosed by this record, loses all rights against a contractor for failure to comply with his contract, a new method has been discovered by which a building contractor may escape liability for contractual breaches. * * * Before it can be held that an owner waives his rights by going into possession of his own house, he must have a clear choice between accepting and rejecting the work as done. The owners of buildings have no such choice where the building is erected on their own ground. Hence the mere act of going into possession cannot be made conclusive evidence of waiver."

In this case the defendant by repudiating the contract and refusing to go further with her payments left the plaintiff no choice in the matter but to take possession of his property or abandon the same, and we feel that under

all the facts and circumstances of this case to sustain the finding of mutual rescission of the contract of sale would in effect permit every person who became dissatisfied with their contract to repudiate the same, without cause, and compel the seller to either abandon his property or rescind the contract and return the down payment on the purchase price. We conclude there was no clear or convincing evidence of a meeting of the minds of these parties on a contract of mutual rescission. There are other assignments of error in the record, but the above seems sufficient to dispose of the case.

The judgment is reversed and remanded to the district court, with instruction to grant a new trial. Appellant to recover costs.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., being disqualified, did not participate herein.