## HAYDEN et al. v. COLLINS.

No. 5349.   Decided December 8, 1936.   (63 P. [2d] 223.)

240

*Willard Hanson, A. H. Hougaard,* and *S. D. Huffaker,* all of Salt Lake City, for appellants.

*Benjamin Spence, Paul E. Reimann, Richard S. Johnson,* and *Clarence F. Williams,* all of Salt Lake City, and *Leslie Frazer,* of Washington, D. C., for respondent.

WOLFE, Justice.

This case was formerly decided October 16, 1934. That opinion is reported in 90 Utah 228, 37 P. (2d) 349, 352. It is now before us on rehearing granted. The following facts are given by way of introduction: On January 14, 1930, plaintiff Sam Hayden entered into a written agreement with the defendant, Ada Collins, by the terms of which the defendant leased from plaintiff the Holland Apartments for a term of five years at $300 a month payable in advance on the 13th day of each month. In the same lease she agreed to purchase the furniture in the apartment as follows:

"The lessor agrees to sell and the lessee agrees to buy all of the furniture and furnishings of every name and nature in the said apartment house for the purchase price of $7000.00 to be paid at the rate of $75.00 per month with the rent of the apartment, interest at the rate of 7 per cent. per annum on all unpaid balance of the purchase price of furniture. Receipt of $2000.00 on this contract is hereby acknowledged."

The apartment house consisted of 22 furnished apartments, and the defendant upon entering into the agreement took possession of the same, collected the rents from tenants, and remained in such possession until May 8, 1930.

On May 2, 1930, plaintiff commenced this action in which he alleged that there was due under the contract for March and April, $462.50, which defendant refused to pay, and asked for judgment that defendant had forfeited her rights in the premises and all parts thereof and that plaintiffs be restored to possession thereof. Plaintiff alleged that there was danger of loss and destruction of the property, etc., and asked for the appointment of Halloran-Judge Trust Company as receiver of the premises, including the furniture and fixtures, pending the outcome of the action. On the same day Halloran-Judge Trust Company was appointed and qualified as such receiver. At the trial the offer of the plaintiff to prove the receiver took possession of the property was objected to by defendant and sustained by the court. On May 8, 1930, defendant notified plaintiff she was leaving the premises, would pay no more thereon, and demanded a return of her money. Plaintiffs refused her request for the return of the money. Shortly after the defendant vacated the premises, the plaintiff took possession thereof and the receiver resigned and was discharged by order of the court May 14, 1930.

On May 20, 1930, defendant filed an answer admitting the execution of the contract, but alleged a return of the property and demand for a return of her money paid on the contract. By way of counter-claim, she alleged the contract had been procured by fraudulent representations on the part of plaintiff Lyman-Callister Company and one Hill, and asked that the two latter be made parties defendant. She asked for a judgment rescinding the contract and that she recover judgment against plaintiffs and Lyman-Callister Company for $2,200. Lyman-Callister Company and Hill were made parties defendants and filed answers denying the alleged fraud. Plaintiffs filed a reply also denying the alleged fraud. The schedule of amendments to the counterclaims and cross-complaints is given later in this opinion.

We believe the statement in the original opinion that

implies that the plaintiff retained a vendor's lien on the furniture which was delivered to defendant was incorrect. The author of that opinion concurs in this. The sale of the furniture was absolute. The title passed, and no vendor's lien was retained. The original opinion concludes that a change from a counterclaim alleging a cause of action for fraud to one of mutual rescission may not be made by amendment. We have come to the conclusion it may. The same rule which applies to complaints or perhaps to cross-complaints where there is an issue made between defendants (in effect, a collateral suit in the same action) does not apply to answers or counterclaims which have for their purpose, even though asking for affirmative relief, the defeating of plaintiff's claim. The person who brings an action, as distinguished from he who defends, has control of the action in the sense that he may choose the underlying set of facts which he thinks constitutes a cause of action against the defendant. There is reason then for saying that, after he so chooses a set of facts which he believes constitutes a cause of action, he should not be permitted to shift to another set of facts by an amended complaint as the basis for another cause of action. Not so with the defendant. The defendant has been brought into court and made to defend. Any set of facts which he may set up, whether sounding in contract or in tort and which would tend to defeat the claim of the plaintiff, is permitted. And if he should, for the time, fail to set up some facts which would constitute an affirmative defense or counterclaim, and then later conclude that these facts would constitute a good counterclaim or defense, he should be able to do so as long as they are not advanced at such a late day as to make the tardiness prejudicial to the plaintiff. And if one affirmative defense relates to parties which she joins and they later drop out of the suit, an amendment setting up a counterclaim or defense against remaining parties is allowable just as if the parties remained the same throughout the suit. It will be noted that

we confine this principle, that amendments of such nature may be made, to those counterclaims which, if proved, would defeat plaintiff's cause of action.

The first counterclaim set up in this action alleged fraud on the part of plaintiffs and the real estate agents of plaintiffs who were interpleaded. This sounded in tort. It was later changed to add a counterclaim against the plaintiffs only, based on the theory of mutual rescission, which sounds in contract. The case was dismissed against the two interpleaded parties. Still later, the answer was amended by dropping out the counterclaim seeking to rescind for fraud, leaving only the counterclaim based on the theory of mutual rescission, an issue purely between plaintiffs and defendant. Both the original and the second amended counterclaims, so-called, were "defeasive"; that is to say, if the defendant had prevailed, she would have defeated the right of plaintiffs to recover on their action to have defendant's rights forfeited. As a consequence of prevailing, defendant would have been entitled to have her money back subject to an accounting for the rental value of the furniture during the time she had it, provided that was set up in reply.

If a counterclaim set up an independent cause of action, not growing out of or connected with the subject matter of the complaint, in the nature of what was known in the civil law as compensation, and then an effort had been made completely to change that cause of action into some other transaction, the conclusion of the original opinion in that regard might be correct. In 49 C. J. 529, § 702, it is stated that:

"Particular liberality greater than that shown with regard to amendments sought by plaintiff to his complaint or petition is shown by the courts in allowing amendments to defendant's plea or answer in order that there may be a trial upon the merits where plaintiff is not surprised nor his rights prejudiced."

In sec. 718, it is stated:

"In the absence of statutory restrictions, it is ordinarily regarded as within the sound discretion of the trial court to permit an amendment although it substantially changes the defense, more particularly, where such an amendment is sought before trial."

In *Munson* v. *Apartment & Hotel Inv. Co.*, 62 Utah 13, at page 22, 218 P. 109, 112, it is stated:

"There is no inconsistency in saying that the execution of a contract was induced by fraud and that afterwards the parties to it agreed to rescind it, and the two grounds for recovery of the consideration paid on the contract are properly alleged in the same complaint. If either is established by proper evidence, the plaintiff is entitled to recover. * * * When the plaintiff fails to establish one of the grounds of recovery and depends upon the other, he does not thereby transform the character or purpose of the action. Its original form and purpose are unchanged."

Certainly, if fraud and rescission could be set up in the declaration, they could be set up together in an answer. If they could be set up together in an answer as affecting the subject matter of the action, which was the case in the first amended answer, there is nothing to prevent one from being set up first and another being added later, which was what happened by the first amendment. And if this could be done, there is nothing to prevent the first counterclaim from later being dropped so as to leave the second only remaining, as was done in the second amended answer. The fact that they may exist together originally or exist together by addition would seem logically to permit them to exist alone at separate times.

It will be noted that the plaintiff proceeded through a receivership, evidently obtained ex parte, the foundation of which application was that there was danger of loss and destruction of the property, etc. By this means, plaintiff took a short cut to obtain possession of the leased premises, whereas, ordinarily he would have had to resort to a landlord's remedies to repossess himself of the premises. As soon as he obtained possession of the premises, and with them the furniture, the receiver was

discharged. The validity of the appointment of the receiver is not in question, although it has the appearance that the court who appointed the receiver was imposed upon merely for the purpose of getting possession of the premises and furniture and that the receiver should not have been appointed. Certainly, the allegation in the application for the receivership that there was danger of loss and destruction was naive, to say the least, considering that plaintiff did not own the furniture. In short, plaintiff was vicariously asking for the appointment of a receiver in order to save the defendant in possession of her own property from destroying it. And under the case of *Oldroyd* v. *McCrea*, 65 Utah 142, 235 P. 580, 40 A. L. R. 230, it may be that the contention of respondent that the court had no power to appoint the receiver is well taken. If so, the method by which plaintiff got possession would amount to a constructive eviction and a trespass as far as his possession of the furniture was concerned. At all events, when the receiver was discharged and plaintiff took possession of the premises and furniture himself, his possession of the furniture was adverse to that of the defendant.

The original opinion states that plaintiff's taking possession of the property (the opinion does not specify whether the word "property" meant the real estate or the furniture) he did what was entirely consistent with his relying on the contract. It states:

"It is consistent with the theory that he was doing so to protect his property from loss and waste and thereby reduce or minimize the amount of damages he might have claimed in a suit against the defendant for a breach of the executory contract of sale."

It is true that since the defendant was in default in her rents that possession of the real estate by the plaintiff might be perfectly consistent with a motive that he was doing so to protect his real estate, but when he exercised dominion over the furniture which belonged to defendant in a proprietary capacity by obtaining a receiver to preserve it for him, without in any way offering to return it to her or

serving notice on her to remove it or giving her notice that he was holding it on her account, such actions constituted a basis for the rescission. It should be noted in this case that the contract for the purchase of the furniture was independent and severable from the contract of lease. There is nothing in the lease which prevented defendant from taking her furniture out at any time. There is no lien for the rent reserved on the furniture. Title to the furniture had passed to defendant and defendant went into possession of it. She paid $2,000 on account of the $7000 purchase price. She was to pay $75 a month on the purchase price of the furniture. She was in possession about four months. In addition, she paid two further payments of $75 a month on February 13, 1930, and on March 13, 1930. If she were in default—which question need not be decided—since title was in her, plaintiff could not repossess himself because of the default since he had not contracted for repossession in case of failure to make payment of the installments. It was simply a plain case of his having sold as vendor, independently of his capacity of lessor, certain furniture to defendant who became a vendee independently of her capacity as lessee. It, therefore, is a plain case of the sale by one to another of furniture for $7,000, title to which has passed and on which $2,150 has been paid on account and, if there was a default, there the vendor would be required to institute an action for the collection of the balance as on any other straight contract for the purchase of goods. The fact that the furniture happened to reside in the vendor's apartment and the fact that the vendor and vendee in this case also had the relationship of lessor and lessee cannot change the fundamental principles of law applicable to this furniture. If the lease had so tied up the furniture as to make the purchase contract a part of the lease and inseparable therefrom, the situation might have been different. But it did not do so. In this case plaintiff applied for a receiver, not only to take possession of the leased premises, but of the furniture and furnishings sold as well. It was a case of

exercising dominion over another's goods inconsistent with the other's ownership and adverse thereto. The appointed receiver had no right to possess the furniture or to hold it as an officer of the court for the benefit of the plaintiff. Plaintiff had no lien upon it for rent. It belonged to defendant. The fact that it would be found in the leased premises when plaintiff took possession of them made it incumbent upon him to treat it as the property of another, which it was, and not to assume dominion over it as if he possessed a lien upon it. He did assume this dominion over it, when he applied for a receiver, perhaps without proper grounds, to take possession of it to preserve it for himself and later took possession of it himself on the theory that defendant had forfeited her rights. This clearly comes under the Munson Case, supra. There the defendant demanded that plaintiff retire from the management and surrender the possession of the business to it. The court said:

"When it took possession of the business and excluded the plaintiff from it, when it denied that plaintiff had any right or interest in the property or the purchase money paid, and when it attempted a wrongful forfeiture of the plaintiff's rights under the contract, it evinced an unequivocal intention to abandon and not perform the contract, which authorized the plaintiff to treat the contract as rescinded."

In this case, when plaintiff obtained a receivership for the personal property, then took possession of it through the receivership proceedings, thus excluding defendant from it, and treated it as if defendant had no right or interest in the property or in the purchase money paid, and thus, when he attempted a wrongful forfeiture of defendant's rights under the contract for the sale of the furniture, he "evinced an unequivocal intention to abandon and not perform the contract" with regard to the furniture which authorized defendant to treat the contract as rescinded.

The defendant paid $2,150 on the furniture. She had it not four months. A rescission would give her back her purchase money less the use value of the furniture during

the time she had it. The rights under the lease are separate from the furniture contract. Plaintiff has ■■■ his recourse for the back rental. A rescission accords with a correct theory of the law and with justice. Plaintiff would be entitled, in the rescission, to the value of the use of the furniture for the period Mrs. Collins had the same in order to fully restore the parties to the position they formerly were in.

Our opinion, as above expressed, necessitates consideration of some of the other assignments of error. It is contended that the court failed to make findings in relation to an issue raised by the supplementary reply to defendant's first answer and counterclaim and also ■ raised by plaintiff's reply to the first amended answer and counterclaim. It appears that by the first answer and counterclaim, asking that the lease and furniture purchase agreement be set aside on account of fraud in the inducement, defendant interpleaded the Lyman-Callister Company and one Hill, a real estate salesman employed by the former, on the ground that they were either the agents of plaintiff or participated in the fraud. Later, these defendants after answering the cross-complaint paid $300, and the action against them was dismissed with prejudice. Plaintiff set this up in his supplementary reply and in the reply to the first amended answer and counterclaim. When the trial came on before one of the district judges, it appears from the record that plaintiff waived his action for rentals provided the court would try out the issue raised by the supplementary reply, to wit, whether a release of the Lyman-Callister Company and Hill did not also release plaintiff from any action for fraud. The court intimated that it would so find, whereupon defendant asked for a continuance and a right to again amend her answer and counterclaim. The court never made findings or gave judgment in regard to the issue raised by the supplemental reply, as indeed it could not because the case was not concluded. The answer and counterclaim were again amended

so as to drop the charge of fraud and set up simply the affirmative defense of mutual rescission. The case then came up for trial with the result that the court found on the issue relating to the mutual rescission only. It is assigned as error that the court failed to find on the issue raised by the supplementary reply. We find no error. When the first cause of action set out in the answer and counterclaim based on fraud in the inducement of the lease and sale contract was dropped in the second amended answer and counterclaim, it went out of the case. It was equivalent to a dismissal of that cause of action. The supplementary reply was to that cause of action. If it was a good defense, it was a defense only to that cause of action. See *Clark* v. *New England Telephone & Telegraph Co.*, 229 Mass. 1, 118 N. E. 348. The cause disappearing, the answer (reply) was also eliminated and the only issue was that of mutual rescission.

Counsel for plaintiff contends that his waiver of the claim for rent was only made by reason of the issue raised by the answer and counterclaim alleging fraud and supplementary reply. The waiver is not in the record. We are uninformed as to the extent and conditions attaching. If it was as plaintiff says, he should be given an opportunity to be heard on the issues raised by the complaint for rent and the denial.

Since the above opinion was written, a dissenting opinion has been filed. It raises the question as to whether defendant should not be made to account for the rentals owing and the $300 damages collected from the Lyman-Callister Company. As to rentals: We must again call attention to the peculiar state of the pleadings. The complaint sued for the rentals owing. This issue was eliminated by stipulation conditional or absolute and the issues narrowed to those made by the counterclaim and reply which issues did not include rentals. The counterclaim which claimed rescission was then amended to strike out the issue of fraud and substitute for it an issue as to wheth-

er the defendant could not treat the plaintiff's action in taking possession of the furniture as if it were his own as a rescission on his part. The action of fraud against the Lyman-Callister Company dropped out of the complaint. Still no reply setting up rentals due was filed. Therefore, we have in effect a complaint (counterclaim) asking that a rescission be declared and an answer (reply) denying that plaintiff had rescinded. This was as to the furniture contract. To permit the matter of rent due to enter into the issues as they then stood would be to permit a foreign matter to come into the accounting on a rescission of the furniture contract. But, if the waiver of the rent claim was conditional on the court finding as to the defense to the fraud action and the fraud action went completely out of the case, then the issues raised by the complaint as to rent due come back in the case. By what has been said above, it is apparent that the $300 cannot be taken into consideration. Lyman-Callister Company paid that to be relieved of defending. They got what they paid for and defendant received a consideration for foregoing any further right of recourse against them. Payment by Lyman-Callister Company to be relieved of any possibility of paying a judgment for its alleged fraud is not permitting the defendant to rescind and "keep a portion of the benefits of the contract."

The case becomes more clear by the following illustration: A. buys a car from B. through C. as B.'s agent. B. sues A. for the remainder of the purchase money. A. interpleads C. whom she accuses of fraud in the sale and cross-complains against C. for damages for fraud and asks rescission against B. on the contract. C. pays $300 to get out from under. The suit as to C. is dismissed, the answer is amended to eliminate fraud and set up another entirely different ground of rescission. The rescission is allowed and B. must repay A. what the latter paid less the use value of the car to A. But B. is not entitled to any of the consideration A. received for dispensing with all right to go against C. Furthermore, if B. had been renting to A. a

house, B. would not be permitted to introduce as an element in the accounting arising by virtue of the rescission of the car transaction, such rental owing. We hold this rental contract and furniture purchase contract as severable. This makes the above illustration apt.

For the above reasons, the first opinion is recalled, and the cause is remanded with instructions to determine the nature and extent of the waiver and, if it was conditional on the presence of the issue of release of plaintiff by the settlement with the other two interpleaded defendants, opportunity should be given plaintiff to prove the allegations of his complaint regarding the defendant owing him rent, and also the value of the use of the furniture for a period of four months. The sum of these two items may be deducted from $2,150 and defendant given judgment for the difference, the furniture to be the property of plaintiff. As to the matters actually found by the court in its findings and conclusions, the same are affirmed; each party to bear his or her own costs of this appeal.

ELIAS HANSEN, C. J., and FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., being disqualified, did not participate herein.

HARRIS, District Judge (dissenting).

I dissent. I agree that the statement in the original opinion in 90 Utah 228, 37 P. (2d) 349, implying that the vendor retained a vendor's lien was not correct. Any vendor's lien upon the property was lost by delivering the possession of the property to the defendant. R. S. Utah 1933, 81-4-5. There being no express contract for a vendor's lien, it is proper that the statement in the original opinion be corrected.

I still feel that the original ruling that the defendant could not, by amendment, set up a new and different cause of action in her counterclaim is a correct statement of the law in this state. This court is committed to the doctrine,

"that the power * * * to permit an amendment of a pleading does not authorize an importation which in effect introduces a new or different cause of action." *Combined Metals, Inc.*, v. *Bastian*, 71 Utah 535, 267 P. 1020, 1027. Cases are cited sustaining the doctrine, and the writer had supposed that matter settled in this state, but now a new doctrine is adopted that, where the amendment happens to be in a counterclaim attached to an answer, such an amendment may be made. The only reason given for this new doctrine is that greater liberality should be allowed by way of an amendment to an answer than to a complaint. I do not think this reason is sufficient to support the rule here made. In this dissenting opinion I will not take the time to repeat or discuss the reasons for the rule in the Combined Metals Case, but I am impressed that it would be much better to avoid the uncertainties and complications arising out of a different and conflicting rule of pleading in a complaint and the rule of pleading in a counterclaim by now overruling the Combined Metals Case and permitting amendments to set up a new and different cause of action in any pleading so long as proper time and opportunity is given to meet the new issues, so as to safeguard the party meeting the new issues from surprise. This seems to be the rule in a few states. 49 C. J. 508. It can be said in favor of such a rule that it might permit a more speedy determination of all matters of dispute between the parties and is by no means so complicated as the law now will be in this state particularly since the ruling here seems to preserve an exception to the exception to the rule in the Combined Metals Case, viz., that even in an answer or counterclaim a new or different cause of action may not be set up by amendment where it did not grow out of or was not connected with the subject matter of the complaint (counterclaim). As I see it, this so complicates the rules of pleading as to amendments in this state that much litigation and possible injustice will result before a more simple rule will be demanded by litigants and it is just this sort of thing that brings delay and disrespect for courts.

An examination of the cases cited in 49 C. J. 529, cited as authority for this new proposition, discloses that none of the cases there cited are amendments to counterclaims. Most of them are cases where amendments to conform to the proof were permitted to an answer after the completion of the trial where there had been some question arise whether or not certain defenses were permissible under the general denial. In none of the cases was the amendment to a counterclaim as is here permitted. I think the ruling in the former case on the question of pleading should stand, and the case be reversed on that ground alone.

I also concede that when the original opinion was written the case of *Munson* v. *Apartment & Hotel Inv. Co.*, 62 Utah 13, 218 P. 109, was overlooked, and that, while the cases are similar in some respects on the facts, I do not agree that the Munson Case is controlling in this case. That case held there was no default on the part of the purchaser. I think the purchaser was clearly in default here. I do not agree that the purchase of the furniture was independent and severable from the contract of lease as stated in the majority opinion. Let it be conceded that the contract was not carefully drawn. It was one contract and one transaction. The lessee agreed to pay $300 rent per month for the building, beginning January 13, 1930, and the lessor agreed to sell, and the lessee agreed to buy, for $7,000 the furniture in the building, to be paid for at the rate of $75 per month with the rent.

The majority opinion seems to infer that the possession of the property was obtained by the receiver. As I read the record, the receivership was abandoned and the receiver discharged without any evidence that he ever took possession of anything. If it be conceded that the receiver was erroneously appointed, it seems to me that fact should not entitle a purchaser to claim there had been a mutual rescission of the contract. Apparently, it is now conceded that the defendant was in default on her contract when the action was commenced. I think that distinguishes this case

from the Munson Case. I cannot agree that this court in the Munson Case intended to go so far as to hold that whenever a purchaser becomes dissatisfied with his bargain he may default in his payments, and if the seller, through mistake in remedy, appeals to the courts for a receiver, but abandons the action before the receiver takes possession, such contract amounts to a mutual rescission of the contract. I think, therefore, the plaintiff should prevail on the issue of the alleged mutual rescission of the contract.

Neither can I agree with the majority opinion as to the nature of the account that the defendant must make as a condition precedent to the mutual rescission. As before stated, I think this was one contract and one transaction; that before she can recover the money paid, she should be required, as far as possible, to restore plaintiff to the status quo. 9 C. J. 1207. This should require her not only to account for the rental value of the furniture while in her possession, but also to pay the rental on the building while in her possession, and also account for the $300 damages collected on her cause of action for fraud in the transaction. In other words, she should account for all the benefits she received from the contract. Unless this is true, she is permitted to repudiate and rescind the contract and keep at least a portion of the benefits she received from the same. I had supposed this to be contrary to the elementary rules of equity. 21 C. J. 172-174, and note 32 in 9 C. J. 1207.

Suppose in this case the defendant had received as a settlement of her cause of action for fraud the full amount paid on the contract in place of the $300 actually received. If she may keep this $2,000 and then turn around and claim a mutual rescission of the contract and recover the full amount paid again by only accounting for the rental value of the furniture, it is difficult to see what becomes of the rules of equity above mentioned.

I think the judgment of reversal should stand as entered in the opinion in 90 Utah 228, 37 P. (2d) 349.