Argued April 5, reversed and remanded June 2, 1967

# LANNERS ET UX, *Appellants, v.* WHITNEY, *Respondent.*

### 428 P. 2d 398

*Gerald R. Pullen,* Portland, argued the cause for appellant. With him on the brief were Hershiser, Canning, Pullen, Mitchell & Rawls, Portland.

*Francis E. Marsh,* McMinnville, argued the cause for respondent. With him on the brief were Marsh, Marsh, Dashney & Cushing, McMinnville.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and REDDING, Justices.

REDDING, J. (Pro Tempore).

This is an appeal by the plaintiffs from a decree dismissing their suit to rescind a contract for the purchase by plaintiffs of a Beechcraft Bonanza airplane.

Plaintiffs, George R. Lanners and Alice M. Lanners, husband and wife, are residents of Portland, Oregon. George R. Lanners is engaged in the insurance business. The defendant is the owner and operator of the Newberg Sportsman Airpark and is engaged in the business of selling new and used airplanes.

While Alice M. Lanners is named as a party plaintiff, it would appear from the record that she did not participate in any manner in the negotiations for the

purchase of said plane, nor did she testify at the trial. Thus, there will be no occasion in this opinion to refer to the plaintiff, Alice M. Lanners, and we will therefore use the singular in referring to the plaintiffs.

As finally agreed upon, under the terms of the oral contract of purchase, the plaintiff was to pay the defendant $7,800 in cash and deliver over to defendant plaintiff's Cessna 175 airplane valued by the parties at $6,200. The Cessna was almost immediately sold by defendant for $7,300. In exchange, the plaintiff was to receive a used 1955 Beechcraft Bonanza airplane equipped with a new Mark-6 radio. Defendant represented to plaintiff that the Beechcraft aircraft was in an airworthy condition. In addition, one of the terms of the sale and as part of the consideration therefor, defendant agreed to conduct, at his expense, a "100-hour inspection" on the Beechcraft airplane to insure its airworthiness and to replace all defective parts revealed by such inspection.

As the subject matter of the sale was a used airplane, it was of significance to the plaintiff that it be in airworthy condition. A 100-hour inspection is a periodic examination of an aircraft prescribed by the Federal Aviation Agency for all aircraft. The inspection, can be made only by mechanics licensed by the FAA and requires replacement or repair of defective parts and correction of malfunctions of the air-frame or engine. Upon completion of a 100-hour inspection, the mechanic performing such inspection is required to certify to the fact of the inspection and that the craft is in airworthy condition. Plaintiff testified as follows regarding his reason for insisting upon the 100-hour inspection:

"Well, as a buyer, it, shall I say, protects me, because if it goes through the hundred-hour inspec-

tion, the aircraft is completely gone through and if there is anything wrong it is repaired at that time, so when I get this airplane I'm assured that I've got an airworthy aircraft."

As a basis of his right to rescind the contract to purchase, plaintiff asserts that the representation that the aircraft was airworthy was false and that he relied upon such representations in making his purchase. By way of answer, defendant admitted "* * * prior to the sale of said aircraft a 100-hour inspection of the aircraft was conducted by Richard M. Austin, a duly licensed mechanic, [an employee of the defendant] and he declared said aircraft airworthy and this information was given to the plaintiff, George R. Lanners." Defendant, however, denied all other matters alleged. After a trial, the court entered its decree denying plaintiff's right to rescind. In a memorandum opinion preceding said decree, the court concluded:

"In view of all the circumstances and the evidence presented at the time of trial, I am of the opinion that the defendant (sic) has an adequate remedy at law for damages or at law in assumpsit, and therefore, the plaintiff has failed to sustain the burden of proof required to justify the extraordinary power of a Court of equity to grant equitable relief in this case."

The sole question presented on this appeal is whether the trial court erred in denying the remedy of rescission sought by plaintiff. As this is a suit in equity, this court must review the entire record de novo, making its own findings and conclusions. While the findings of the trial court are to be considered, they are not binding on this court.

The evidence reveals that on August 13, 1964, the

defendant received the Beechcraft from Houston, Texas. The airplane first came to the attention of plaintiff as a result of a Portland newspaper advertisement offering the airplane for sale at $12,400. Between August 15 and 20, negotiations were had and an oral contract for the sale of said plane, equipped with a new Mark-6 radio, for $14,000, was entered into between the parties on the terms hereinabove referred to.

Between August 15 and 19, the defendant's mechanic, Richard M. Austin, pursuant to the instruction of the defendant, purported to conduct a 100-hour inspection on the Beechcraft. Defendant instructed his mechanics to "* * * Give it whatever it needed and put it in airworthy condition * * *." On August 19, the craft was delivered to the plaintiff together with Austin's certification that a 100-hour inspection had been conducted and the aircraft was in an airworthy condition. At the time of delivery, defendant assured plaintiff that the 100-hour inspection had been made. Plaintiff testified that in taking delivery he relied upon this representation together with the certificate of airworthiness of defendant's mechanic.

On the evening of the date of delivery, plaintiff returned the craft, after a few hours of flight, for some minor adjustments and repair which were undertaken by defendant at no charge to plaintiff. On August 21, the Beechcraft was finally turned over to plaintiff, who on August 22, 1964, commenced a flight to Chicago.

It was on this trip that plaintiff first had difficulty with the aircraft. In Burley, Idaho, it was necessary to overhaul the magneto. Oil consumption was abnormally high. On the return trip, on September 6, the motor controlling the propeller pitch became

inoperative, and there was abnormally high pressure in the cylinder head. These problems and certain other malfunctions were corrected in Des Moines, Iowa. Another stop was made in Burley, Idaho, to repair a broken cable. Between Burley, Idaho, and Ontario, Oregon, the engine became overheated so that the plaintiff was required to set down in Ontario until the cool of the evening. The trip was then continued to Portland with "cowl flaps" open, since, if operated normally, the engine overheated. The defendant admitted that neither the excessive use of oil nor the overheating of the engine were normal conditions.

On September 7, Labor Day, 1964, the day after plaintiff returned from Chicago, he contacted the defendant regarding the problems encountered on the trip. It was the testimony of the plaintiff that defendant refused to make any adjustment with plaintiff. Defendant admitted that plaintiff stated he had had more trouble than he expected and that "*  *  *  it couldn't go on this way  *  *  *," but denied that plaintiff made demands for adjustment.

Subsequently, on September 18, at the instance of the plaintiff, the Beechcraft was inspected by Al Evans, an FAA licensed mechanic employed by Flightcraft. The list of defects in the aircraft found by Evans covers five pages of the transcript. The items on the list were limited to those required by the FAA in a 100-hour inspection.

Evans testified that certain inspection plates on the wings and fuselage of the plane had not been removed by defendant's mechanic as required for a 100-hour inspection; that, whereas, the propeller motor was required to be overhauled every 250 hours of operation or once each year, no overhaul had been

performed for 626 hours. Because of these facts, as well as his observation of over 30 other deficiencies, disclosed by his inspection, in response to the court's inquiry, Evans testified that no 100-hour inspection had been made in August of 1964.

A second inspection of the aircraft was conducted on September 14 and 18, by Keith Bancroft, a General Aviation Maintenance Inspector for the Federal Aviation Agency. Bancroft's inspection of the Beechcraft disclosed conditions which existed on August 19, the date of the completion of the alleged 100-hour inspection, which were below the minimum requirements of the FAA for airworthiness. As a result of his inspection, Mr. Bancroft caused an official reprimand to be issued to defendant's mechanic, which contained the following pertinent passage:

"Dear Mr. Austin:

"We have received a report of investigation from which it appears that on or about August 19, 1964, you, the holder of Mechanic Certificate No. 1472388, with airframe and powerplant ratings, conducted a 100-hour inspection on civil aircraft N333K, a Beechcraft Model F-35. You returned said aircraft to service certifying it as airworthy when, in fact, several unairworthy items did exist at the time of its release  *  *  *."

The testimony of Austin, defendant's mechanic who performed such inspection as was made on the airplane, is revealing on the question of the weight to be given the findings of Evans and Bancroft. Austin testified that because plaintiff wanted his airplane in time to make his Chicago trip, the 100-hour inspection was cut short in certain respects and that had the inspection not been cut short, there would have been no trouble at all. This evidence, taken together with the

testimony of Evans and Bancroft, weighs heavily against the defendant's contention that the Beechcraft was in airworthy condition on August 19, the date on which the airplane was tendered plaintiff, or on August 21, when the craft was finally delivered to plaintiff.

The plaintiff, subsequent to September 7, 1964, when he first notified defendant of the problems with the Beechcraft, was in constant communication with defendant with regard to it. On October 6, 1964, the plaintiff notified the defendant that he considered the contract at an end.

After plaintiff returned from Chicago, he stored the airplane at the Portland International Airport. Plaintiff produced evidence of the cost of certain repairs in the total amount of $159.45, made on the plane during the Chicago trip and prior to October 6, when he rescinded the contract. Subsequent to that time he incurred expenses in storage and protection of the craft which he then held for the defendant. Removal of the radio and battery and the installation of special storage oil resulted in a charge of $66.45. Ground insurance was obtained for the plane at an annual cost of $250.00. To the time of trial, storage charges had accumulated for 20 months at the rate of $7.50 per month.

The uncontroverted evidence is that defendant represented the 1955 Beechcraft Bonanza to be in airworthy condition as of the date of sale and that defendant, prior to delivery, further represented that a 100-hour inspection of said plane had been made by his employee, Richard M. Austin, a duly licensed mechanic. We have no doubt that the representations made were false. Defendant asserts, and it may be conceded for the purposes of this opinion, that defendant Whitney had no personal knowledge that the aircraft was not

as represented. Nevertheless, at the time of the sale, the aircraft was stated to be airworthy, and upon delivery, the defendant assured plaintiff that a 100-hour inspection had been made and the log book tendered with the aircraft contained a mechanic's certificate that such inspection had been made and that the craft was airworthy.

■ An unbroken line of cases in this state has established the proposition that a false representation of a material fact, though innocently made, may be ground for the rescission of a contract. The most recent of such cases is *Furtado v. Gemmell,* 242 Or 177, 408 P2d 773 (1965).

This is not an action for damages in fraud. The plaintiff, therefore, if otherwise entitled to rescind, is not precluded by defendant's ignorance of the falsity of his representation.

The airworthiness of the aircraft was unquestionably a material factor in plaintiff's decision to purchase, and defendant's representations as to that fact were calculated to and did induce plaintiff's decision. Plaintiff testified that he relied upon defendant's representation, and, under the circumstances, such reliance was reasonable.

The contract with which we are here concerned was entered into in August, 1964. The Uniform Commercial Code—Sales (UCC) was adopted by the Oregon legislature in 1961 and became effective September 1, 1963, as Chapter 72 of the Oregon Revised Statutes. The UCC governing sales of personalty is therefore applicable to this case, even though the parties to this appeal in their briefs do not allude to Chapter 72.

ORS 72.7210 provides that the remedies for material misrepresentation available to a purchaser of personalty includes all those available to a purchaser for

nonfraudulent breach under Chapter 72 of the Oregon Revised Statutes.

Failure to reject nonconforming goods within a reasonable time after delivery or tender constitutes an acceptance thereof. ORS 72.6020 (1); ORS 72.6060 (1) (b). Nevertheless, such acceptance may be revoked where the nonconformity of the goods to the contract substantially impairs the value of the goods to the buyer, if the buyer's acceptance was without discovery of the nonconformity and his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances that the goods conformed to the contract. ORS 72.6080 (1) (b).

As was previously stated, we conclude that the unairworthy condition of the airplane materially impaired its value to plaintiff. We further hold that defendant's assurances that the aircraft was airworthy were reasonably relied upon by plaintiff and that he was induced thereby to accept it without first inspecting it to determine whether it in fact conformed to the contract.

ORS 72.6070 provides that after acceptance of goods, a buyer "* * * must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy * * *." Notice of *any* breach preserves the buyer's remedy of damages if given within a reasonable time after the breach was or should have been discovered. Plaintiff preserved his remedy of damages by notifying defendant on September 7, 1964, that he had encountered unanticipated difficulty with the aircraft and that "it couldn't go on this way." See Comment 4 to ORS 72.6070 in the pamphlet "Oregon's Uniform Commercial Code," published by the Legislative Counsel Committee in 1962. Revocation of ac-

ceptance which is involved here, however, is not accomplished by notice of "any" breach, but requires that notice be given of a nonconformity in the goods *materially impairing their value* to the buyer, and must be given within a reasonable time after the buyer discovers or should have discovered *such* nonconformity. ORS 72.6080.

■ Notice that a party intends to consider a contract at an end or terminated amounts to a revocation of acceptance, and preserves to the plaintiff the remedies outlined in ORS 72.7110, including that of cancellation. We hold that plaintiff's notice of "rescission" to which we have referred, reasonably informed defendant of his intent to terminate the contract and was sufficient to constitute a revocation of acceptance. ORS 71.2010 (26).

■ We must next determine whether the notice which was otherwise adequate was given within a reasonable time after the nonconformity warranting cancellation was or should have been discovered. What is a reasonable time is a question to be determined on the facts of each case. The authors of the UCC comment that since revocation of acceptance will usually occur only after the buyer has ascertained that adjustments cannot be made, a reasonable time for revocation of acceptance will extend ordinarily beyond the time in which notice of breach must be given. See Comment 4 to ORS 72.6080.

■■ With respect to the question of reasonable notice, the evidence showed that on September 7, one day after plaintiff returned to Portland from Chicago, plaintiff Lanners notified defendant of the difficulty encountered with the Beechcraft and was in communication with him thereafter about the airplane. One week later, on the 14th of September, inspection of

the craft was made for plaintiff Lanners by Bancroft. On the 18th, both Bancroft and Evans inspected it and found it unairworthy. Prior to these inspections conducted at plaintiff's request, he had no certain knowledge of the extent of the nonconformity of the airplane to the contract. Less than three weeks later, plaintiff Lanners, through his attorney, notified defendant of his decision to cancel the contract. Plaintiff was not required to notify the defendant of his intention to revoke his acceptance until he was reasonably certain that the nonconformity substantially impaired the value of the airplane to him. ORS 72.6080. His mere suspicions prior to inspection were not sufficient to require notice. *Brown et ux v. Hassenstab,* 212 Or 246, 255, 319 P2d 929 (1957). Plaintiff was entitled to and did inspect the aircraft and make attempts to adjust the differences between the parties prior to revoking his acceptance. Considering all the circumstances, we hold the delay of less than three weeks, between September 18, when the unairworthy condition of the Beechcraft became known, and October 6, the date on which notice was given defendant of his intention to rescind, was not an unreasonable delay. *Brown v. Hassenstab,* supra, where approximately five weeks was held reasonable; *Koehler v. Dennison,* 72 Or 362, 143 P 649 (1914), approximately six weeks was held reasonable.

■ The trial court denied plaintiff the remedy of rescission, concluding that plaintiff failed to prove certain allegations of his complaint and that plaintiff had an adequate remedy at law. It cannot be ascertained from the ruling of the trial court in what respects it found failure in the proof. No specific findings of fact were made. A thorough review of the record has convinced us that plaintiff established by the preponder-

ance of the evidence a material misrepresentation was made by the defendant, which induced him to enter into the contract. In denying rescission, or more appropriately "cancellation" as the UCC terms it, the availability of an adequate remedy at law is wholly irrelevant to plaintiff's right to elect to proceed in equity for cancellation.

█ Under ORS 72.7110, both cancellation and damages are available concurrently and not in the alternative as was the case prior to the adoption of the UCC. *Schneider v. Person,* 34 Pa D & C 2d 10 (C P Lehigh County, 1964); ORS 72.6080, and Comment 1 to said section. Since the legal remedy of damages and the equitable remedy of cancellation are available concurrently, the availability of, or the adequacy of remedy at law, is not the criterion for the denial of cancellation. We hold that plaintiff Lanners is entitled to the remedies outlined in ORS 72.7110, afforded a buyer who properly revokes acceptance insofar as they are warranted by the evidence.

█ Plaintiff is entitled to cancellation of the contract and the recovery of so much of the price as has been paid, including $6,200 representing the value of the Cessna airplane given to defendant as part of the price.

In addition, plaintiff may recover for incidental damages as provided in ORS 72.7110 and 72.7150 for expenses reasonably incurred as a result of seller's breach, including those incurred in the care and custody of the goods. Comment 2 to ORS 72.7110 tells us that such expenses are measured by their cost. We find that plaintiff is entitled to recover the amounts spent in repair on the aircraft on the Chicago trip, amounts spent to preserve the craft after the Chicago trip, including cost of removal of the radio and battery,

installation of storage oil, ground insurance and storage charges. For the payment of these items plaintiff has a security interest in the aircraft. ORS 72.7110 (3). See Comment 2 to ORS 72.7110. Plaintiff is further entitled to a judgment for interest on the entire purchase price paid at the rate of six percent from October 6, 1964, the date of cancellation and demand. ORS 82.010 (1) (a); *Weiss and Hamilton v. Gumbert,* 191 Or 119 on petition for rehearing p. 140, 227 P2d 812, 228 P2d 800 (1951).

As the exact amount of some of said recoverable items cannot be ascertained from the record, and as in any event, this matter must be remanded to determine what recompense the defendant is entitled to for the time plaintiff had the use of the airplane on his trip to and from Chicago, this matter is remanded with directions that the amount of said items be determined and that a decree in conformity with this opinion be entered. *Hayden et al v. Collins,* 90 Utah 238, 63 P2d 223 (1936); *Dunn v. Barish,* 32 Ohio App 310, 166 NE 912, 28 OLR 275 (1928); *Roddy v. Stansbury,* 45 Ga App 705, 165 SE 764 (1932).

Reversed and remanded without costs to either party.