MUNSON v. APARTMENT & HOTEL INV. CO. et al.

No. 3921.  Decided July 5, 1923.  (218 Pac. 109.)

1. SALES—NOTICE AND OPPORTUNITY TO PAY REQUIRED BEFORE FORFEITURE. Where a contract for the sale of one-half interest in a hotel business provided that, if the buyer failed to promptly make the monthly payments stipulated, all of his rights under the contract at the option of the seller should terminate and all sums paid by him should be retained by the seller as liquidated damages, the seller having accepted the monthly installments previously maturing could not declare a forfeiture without giving the purchaser notice and opportunity to pay.

2. APPEAL AND ERROR—FINDINGS OUTSIDE PLEADINGS AND ISSUES DISREGARDED. In a suit for rescission of a contract for the purchase of an interest in a hotel business and for relief against a forfeiture attempted to be asserted by the seller on the ground of plaintiff's mismanagement and misconduct, findings as to plaintiff's failure to make payments stipulated in the contract will be disregarded as outside the pleadings and issues.

3. SALES—PERMITTED ONLY AS STIPULATED IN CONTRACT. Under a contract whereby plaintiff purchased an interest in a hotel business in monthly installment payments and assumed the management of such business, the seller could not declare a forfeiture for the purchaser's misconduct or mismanagement under a provision of the contract authorizing a forfeiture for failure to make the required payments.

4. CONTRACTS—FORFEITURES NOT FAVORED. Forfeitures are not favored, and one asserting forfeiture must be held strictly within the contract provisions authorizing such forfeiture, so that a forfeiture on grounds not specified will not be sustained.

Appeal from District Court, Second District, Weber County; *George S. Barker,* Judge.

Action by E. E. Munson against the Apartment & Hotel Investment Company and others. Judgment for defendants, and plaintiff appeals.

REVERSED and REMANDED, with directions.

*A. G. Horn* and *A. E. Pratt,* both of Ogden, for appellant.

*Dickson, Ellis & Adamson* and *L. E. Tripp,* all of Salt Lake City, for respondents.

CHERRY, J.

This action is for the rescission of a contract executed April 8, 1918, by the plaintiff and the Apartment & Hotel Investment Company (hereinafter called defendant company) for the sale of a one-half interest in an apartment house business, and to recover the sums paid on account of the purchase price. It is alleged in substance that on April 8, 1918, the plaintiff was imposed upon while he was sick, and induced by false representations to enter into the contract; that the plaintiff paid $5,000 in money and executed and delivered a note and mortgage for $3,000 to apply on the purchase price, and took possession and management of the business pursuant to the contract, and continued in charge thereof until July 17, 1918, when he alleges he discovered defendant's fraud and demanded a rescission of the contract, whereupon the defendant company claimed that plaintiff had forfeited the contract and the payments theretofore made, and demanded that plaintiff surrender the management and possession of the business to defendant; that plaintiff did thereupon surrender

the business to defendant company with the understanding that his rights would not be prejudiced and that defendant company would "immediately make an adjustment with said plaintiff"; that defendant company has refused to make any adjustment and claims that plaintiff has no interest in the property agreed to be sold, or in the sums of money paid on account of the purchase price.

The plaintiff prayed for a decree canceling the contract, for the return to plaintiff of the sums paid on account of the purchase price, and the cancellation and discharge of the note and mortgage executed by him.

The defendant company denied the allegations of fraud and misrepresentations, and alleged a forfeiture of the contract on account of the misconduct of the plaintiff and his mismanagement of the business.

The action was tried by the court, who found the issues in favor of the defendants, and entered a judgment dismissing the complaint. Plaintiff appeals.

The trial court, upon conflicting evidence, made findings that plaintiff was not induced to enter into the contract by fraud or misrepresentations. This finding is assailed by plaintiff as being contrary to the evidence. Without reviewing the evidence, it is enough to say that we think the plaintiff was fairly beaten on this issue, and that the evidence supports the finding of the trial judge in that respect.

The determination of the question of fraud against the plaintiff left him in the situation of having entered into the contract without wrongful inducement, and of being legally bound by its terms, and the question of the rights of the parties, in that aspect, remains to be determined.

On the part of plaintiff it is claimed that the acts of the defendant company were such as to entitle the plaintiff to treat the contract as rescinded and to recover the consideration paid; while the defendant company asserts its right, under the circumstances, to forfeit the contract and retain the sums paid on account of the purchase price as liquidated damages.

The contract is in writing and is set forth and admitted in the pleadings. It contains much matter not material to the

present controversy, and for the sake of brevity and clarity those portions only which affect the questions here presented are stated. The agreement is dated April 8, 1918, and recites that the defendant company is the owner of a 20-year lease upon the upper floors of the Orpheum Theatre Block, in Ogden City, which it had furnished and where it owned and conducted an apartment hotel or apartment house business.

It agreed to sell the plaintiff a one-half interest in the business, exclusive of the lease, for $9,800 and the additional sum of $200 per month, during the term of the lease of the premises in which the business was conducted.

The plaintiff agreed to pay $2,300 when the contract was executed; $2,600 on April 15, 1918; to execute a note for $3,000 due April 15, 1919, and to secure it by a mortgage on certain real property in Idaho; and to pay $1,900 at the rate of $100 per month, commencing May 15, 1918. In addition he agreed to pay $200 on the 15th day of each month during the term of the lease of the premises.

The plaintiff was to take charge of and manage the apartment house business, for which he was to be paid a salary of $125 per month out of the profits or net proceeds of the business, payable only after the house rent and the sum of $200 per month to defendant company had been paid.

The net profits of the business, after the payment of the normal expenses, the house rent, the $200 per month to defendant company and the plaintiff's salary, were agreed to be divided equally between plaintiff and defendant company.

A clause in the contract provided that if the plaintiff should fail to pay promptly to defendant company during the term of said lease the sum of $200 per month, as provided in the contract, then and in that event, at the option of defendant company, all right of the plaintiff in the contract to purchase the property and to continue as manager of the business should cease and determine, and all sums theretofore paid to the defendant company should become its property, without recourse or right on the part of the plaintiff to have or receive any part thereof; it being understood and agreed that such sums so paid should be retained by the de-

fendant company as liquidated damages for the breach by the plaintiff of the terms and conditions of the contract.

The plaintiff agreed to devote his entire time and attention to the management and operation of the business for the salary specified, and that if he should "cease to give his time, attention and services to the management and operation" of the business, or cease to be and remain as such manager (except in case of sickness or death) without the consent of the defendant company, then and in that event his salary should cease and all his rights under the contract "cease and determine."

It is set forth in the answer that on or about the 1st day of May, 1918, the plaintiff took charge of the apartment house business as the manager thereof, pursuant to the contract, and had sole charge thereof until July 17, 1918; that after the execution of the contract the plaintiff paid to defendant company the sums of $2,300, $2,500, and $100, and executed and delivered the note and mortgage for $3,000, as required by the contract; and also on July 10, 1918, paid the first installment of $100 upon the obligation of $1,900; and also on May 16, 1918, paid the first additional monthly payment of $200; and on June 15, 1918, paid the second additional monthly payment of $200 as required by the contract.

The plaintiff testified and produced documentary evidence to show that he paid $100 in payment of the installment due in May on the $1,900 item, in addition to the payments admitted in the answer. No finding was made by the court of what sums had been paid by the plaintiff or of what sums were due and unpaid, except a general finding that plaintiff "failed, neglected and refused to make the payments required to be made by him pursuant to the terms of said agreement aforesaid at the times and in the manner provided in and by the terms of said agreement."

After denying the allegations of fraud, and alleging the due execution of the contract, the defendant company alleged in its answer in substance that the plaintiff, after he took charge of the business under the contract, was almost constantly under the influence of intoxicating liquors, and at times was so intoxicated that he was unable to conduct the

business of the apartments; that he permitted undesirable people to frequent the apartments, to carry intoxicating liquors therein and to engage in disorderly conduct therein, and to take and remove from the apartments large quantities of the silverware and equipment thereof of the value of $661.55; that the conduct of the plaintiff caused many tenants and patrons of the apartments to move out, and injured the reputation and business of the apartments; that on the 17th day of July, 1918, the plaintiff was informed that he was an unfit and improper person to be intrusted with the management and operation of the apartments and was notified that he could no longer remain as manager thereof, and requested to surrender and retire from his position as such manager and was notified that he had forfeited all rights to his interest in the contract; that the plaintiff voluntarily surrendered the management of the apartments to defendant company, who, after serious efforts, restored the reputation of the business and put it again on a profitable basis.

At the trial the defendant company produced evidence tending to show that the plaintiff had been intoxicated, and had injured the business which he was managing by his misconduct. These charges were stoutly denied by the plaintiff and other witnesses, but the trial court made general findings that the plaintiff in violation of the agreement failed to properly manage the apartments and suffered them to be improperly conducted, whereby the reputation and standing of the apartments were materially injured to such an extent that the income therefrom was insufficient to pay the cost of operating the same, and that on account of the plaintiff's conduct it was impossible under plaintiff's management to conduct the business at any profit; that the plaintiff failed, when requested by defendant company, to make the payments required to be made by him pursuant to the agreement at the times and in the manner provided by the agreement and so conducted himself that he became and was on numerous occasions wholly incapacitated to properly or at all carry on the operation and business of said apartments. The court further found that on account of the failure of the plaintiff to keep and perform the terms and conditions of the agree-

ment and to make the payments required to be made by the terms of the contract, and his failure, neglect, and refusal to devote his time, attention, and ability to the management of the apartments, the defendant company demanded that plaintiff surrender the management of the apartments; that plaintiff in response to said demand did surrender such management, and from thence hitherto has had no part in the management of the same, and has in no respect complied with either or any of the terms of the agreement aforesaid.

The findings referred to are vigorously assailed by the plaintiff on the grounds that they are not supported by the evidence.

With respect to the payments due on the contract, it is undisputed that all amounts due had been paid by plaintiff except the sums of $200 and $100, respectively, which became due July 15, 1918, and that on the day of the alleged forfeiture the plaintiff paid to defendant company $97, which seems to have been money properly applicable to the $200 payment due on July 15th.

It also appears that the monthly installments previously maturing had been paid to and accepted by the defendant company after the dates on which they were payable, according to the contract. This fact imposed upon defendant company the necessity of giving notice and opportunity to pay before a forfeiture could be claimed. *Kohler* v. *Lundberg*, 54 Utah, 339, 180 Pac. 590; *Newell* v. *Stone Co.*, 181 Cal. 385, 184 Pac. 659; 9 A. L. R. 993, and note b.; 39 Cyc. 1384; 2 Warvelle on Vendors, § 820.

The answer does not allege that any sum was due or unpaid at the time of the supposed forfeiture; does not allege any demand for payment of any sum, or that it gave any notice that defendant company intended to exercise its option in that respect; nor does it allege that it forfeited the contract by reason of nonpayment.

There is no evidence whatever that a demand for any payment was made.

The findings of the court with respect to the failure of the plaintiff to make the payments due on the contract are outside of the pleadings and issues, and so far as they

indicate a request or demand for payment by defendant company are utterly without support in the evidence.

Indeed, it is clear from the record that the defendant company did not and could not rely upon nonpayment as a ground of forfeiture, but asserted its right to terminate and forfeit the contract upon the alleged misconduct of the plaintiff and his alleged mismanagement of the business, and whether or not the defendant company had the right to forfeit and terminate the contract upon the latter grounds is the decisive question in this case.

The contract contains no general forfeiture clause for nonpayment or nonperformance, but expressly provides for a forfeiture, at the option of the defendant company, in case only of the failure to pay monthly the sum of $200 per month during the term of the lease. The contract also provides that should the plaintiff cease to give his time, attention, and services in the management of the apartments or cease to be and remain as such manager without the consent of the defendant company, his salary and all his rights under the contract shall "cease and determine."

It does not provide that in such event the payments previously made shall be forfeited. Whether or not a forfeiture would follow as a matter of law it is not necessary now to decide. It is enough to say that the defendant company did not allege or prove that the plaintiff ceased to give his time, attention and services to the management of the apartments, or that he ceased to be and remain such manager without its consent. On the contrary, the defendant company affirmatively alleged that about May 1, 1918, the plaintiff did take charge of the apartments as manager thereof pursuant to the contract, and until July 17, 1918, had full, complete, and sole charge thereof, when he surrendered the management to defendant company at its request.

The answer alleged, in brief, that the plaintiff became intoxicated and mismanaged the business, injured its business, and made it unprofitable.

As before stated, the evidence of plaintiff's intoxication and misconduct was denied by substantial and persuasive

testimony, and whether the general findings of fact by the trial court on this subject should be sustained is a very doubtful question, but for reasons about to be stated it is not necessary to determine it:

"Forfeitures are not and never have been regarded by the courts with any special favor; and where a party insists upon a forfeiture he must make clear proof and show that he is entitled to it. It has ever been regarded as a harsh way of terminating contracts, and for this reason he who seeks to avail himself of the privilege must be held strictly within the limits of the authority which gives the right." 2 Warvelle on Vendors, § 807.

"If the contract specifies what defaults or breaches of conditions shall be ground for forfeiture, it governs the rights of the parties in this respect, and a forfeiture on other grounds not included in the contract will not be sustained." 2 Black on Rescission of Contracts, § 418; *Oughan* v. *Larson*, 13 N. D. 373, 100 N. W. 1088.

"Such forfeitures are sustained only when the parties have contracted therefor, and the terms of the contract will not be extended to sustain forfeitures." 39 Cyc. 1373.

Tested by these principles, the forfeiture claimed by defendant company cannot be sustained.

The forfeiture, to be upheld, must be authorized by the express provisions of the contract, and in this respect the contract in question provided that plaintiff's rights should cease and determine only in case he failed to give his time, attention, and services, in the management of the apartments, or ceased to be manager without defendant company's consent. It is not enough to say that he did give his time, attention, and services and did continue to act as manager, but that the quality of his services was bad. The quality of his services as manager was not made a condition of preserving plaintiff's rights under the contract.

It therefore follows that the defendant company did not have the right, under the circumstances, to forfeit the contract and retain the amounts paid on the purchase price, as liquidated damages.        4

The remaining question is the plaintiff's right to treat the defendant company's conduct as a rescission of the contract and to recover the sums paid on the purchase price.

The defendant company insists that the complaint is insuffi-

cient to present the question of a voluntary rescission by the parties; that such a claim is inconsistent with the allegations of fraud, and to entertain it transforms the character of the action.

The complaint, exclusive of the charges of fraud, alleges the execution of the contract, the payment of a part of the consideration, the execution of the note and mortgage, the taking possession by the plaintiff, and that later the defendant company demanded that plaintiff retire as manager and surrender possession upon the agreement that plaintiff's rights would not be prejudiced and that an adjustment would be made; that defendant company has refused to make any adjustment and claims that plaintiff has no interest in the property, etc. The matters requisite are imperfectly stated, but we think the essential facts are pleaded to show an agreement for rescission, or facts which authorize the plaintiff to treat the contract as rescinded. There is no inconsistency in saying that the execution of a contract was induced by fraud and that afterwards the parties to it agreed to rescind it, and the two grounds for recovery of the consideration paid on the contract are properly alleged in the same complaint. If either is established by proper evidence, the plaintiff is entitled to recover. *Connelly* v. *Malloy*, 106 Wash. 464, 180 Pac. 469. When the plaintiff fails to establish one of the grounds of recovery and depends upon the other, he does not thereby transform the character or purpose of the action. Its original form and purpose are unchanged. Since the defendant company could not forfeit the contract, under the circumstances, the undisputed facts in the case show that the contract was rescinded and abandoned as by the mutual consent of the parties. When the defendant company demanded that plaintiff retire from the management and surrender possession of the business to it, when it took possession of the business and excluded the plaintiff from it, when it denied that plaintiff had any right or interest in the property or the purchase money paid, and when it attempted a wrongful forfeiture of the plaintiff's rights under the contract. it evinced an unequivocal intention to abandon and not perform the contract, which authorized the plaintiff to treat the contract

as rescinded.    2 Parsons on Contracts, 678; 1 Black on Re-
scission, § 205; 39 Cyc. 1404; *Vider* v. *Ferguson,* 88 Ill. App.
126; *Treat* v. *Smith,* 139 Ill. App. 262; *Pool* v. *Motter,* 55
Utah, 288, 185 Pac. 714; *Maffet* v. *O. & C. R. Co.,* 46 Or. 443,
80 Pac. 489.

Whether or not the defendant company agreed as a matter
of fact to "make an adjustment" with the plaintiff, as al-
leged in the complaint, is not material, because upon rescis-
sion it follows, under the circumstances here shown, that each
party is entitled to be restored to his original status.    The
plaintiff is entitled to recover the sums paid on the contract,
and the defendant company is entitled to its actual damages
suffered on account of the acts of the plaintiff while in pos-
session of and managing the defendant's property.    *Jones* v.
*Grove,* 76 Wash. 19, 135 Pac. 488; *Connelly* v. *Malloy,* supra;
*Pool* v. *Motter,* supra; *Woodward* v. *W. V. I. L. Co.,* 89 Or.
10, 173 Pac. 262.

The judgment appealed from is reversed, and the cause is
remanded to the district court for further proceedings in
accordance with the views expressed in this decision.    The
district court is directed to permit the respective parties to
amend their pleadings if they so desire, and to offer addition-
al evidence to enable the court to determine the total amount
paid by the plaintiff on the contract, and the actual damages
suffered by the defendant company on account of the acts
of the plaintiff.    The court will then make its findings and
render a judgment for the plaintiff for the cancellation and
discharge of his note and mortgage and for the amount paid
on the contract, with interest, less the amount of the damages
found to have been sustained by the defendant company.
Appellant to recover costs of appeal.

WEBER, C. J., and GIDEON, THURMAN, and FRICK,
JJ., concur.