[Civ. No. 1285.    Fourth Appellate District.—January 28, 1935.]

H. GEORGIE SCOTT, Plaintiff and Respondent, v. CALIFORNIA FARMING COMPANY (a Corporation), Defendant; SCHULER–O'CONNELL GRAIN COMPANY (a Corporation), Defendant and Respondent; MILLER & LUX INCORPORATED (a Corporation), Defendant and Appellant; W. J. HAMMONDS et al., Interveners and Appellants.

J. E. Woolley and Vincent J. McGovern for Appellants.

Nutter & Rutherford, A. P. Hayne and Sutherland, Dearing & Jertberg for Respondents.

ALLYN, J., *pro tem.*—Davidson Bros. bought, under a conditional sales contract from Miller & Lux Incorporated, a substantial acreage of grain and cotton land. The California Farming Company, the vendees' operating company, owned and controlled by them, leased the entire property and carried on all farming operations. Davidson Brothers

defaulted in their payments of principal, interest, taxes and assessments, and over a period of several months negotiations were had with Miller & Lux concerning these defaults and the possible rearrangement of the defaulted and future payments under the contract. While these negotiations were under way, the Schuler-O'Connell Grain Company loaned the California Farming Company substantial sums of money for the purpose of making the grain crop on the land and took as security a crop mortgage thereon. The negotiations with regard to the modification of the contract and curing of the vendees' defaults failed and after the grain crop had been planted and was merely awaiting the annual seasonal development to be ready for harvest, Miller & Lux served upon Davidson Bros. a notice of default, giving to them thirty days within which to meet the payments provided for by the contract, and upon the expiration of this time gave formal notice of the termination of said contract.

From this point there is considerable conflict in the testimony as to what actually transpired. It is admitted, however, that the Davidsons assigned their vendees' interest in the contract of sale to Miller & Lux. The Davidsons testified to the effect that this assignment was given upon the vendor's assurance that they would be given a lease for the balance of the crop season and witnesses for the vendor stated that while the matter of the lease was discussed, it was not a condition of nor the consideration for the assignment. Officials of Miller & Lux came upon the land at the time of the assignment and insisted that operations for planting cotton cease; that all labor claims be paid to that date; and that all tools and equipment be either moved from the property or brought in and stored at a central place to be removed within thirty days' time. Arrangements were also made for the renting of certain of the farming tools and the purchase of cottonseed from the lessee. The lessee was paid by Miller & Lux for these items. The testimony of the Davidsons is to the effect that they considered all of these transactions formalities connected with the assignment and preliminary to giving them the lease on the property. At any rate negotiations for the lease failed and the property was sold to Hammonds & Edwards under a conditional sales contract whereby Miller & Lux undertook to protect the new purchasers against the crop mortgagee's claim.

The new purchasers moved into the dwelling house on the premises and continued with some of the farming operations although there is testimony that the California Farming Company and the Davidson Brothers continued to exercise some supervision and control over the place, and when the grain harvest was started we find two harvesting outfits in the same grain field, one manned by Hammonds & Edwards and the other by the crew of the California Farming Company. This impossible situation was solved by the appointment of a receiver, who took charge, completed the harvest and sold the crop. The money now in the receiver's hands is the sole remaining subject of this litigation and since it is not sufficient to pay off the first crop mortgage and since the vendees under the new contract were protected against loss by Miller & Lux, the sole question is whether or not the Schuler-O'Connell Grain Company, crop mortgagee, or Miller & Lux, vendor, is entitled to the proceeds of the crop. The trial court found on all material issues for the former, and we believe correctly ordered the receiver to pay over to it the crop proceeds.

The appellants, Miller & Lux and Hammonds & Edwards, submit that they are entitled to the proceeds of this crop on the theory that the Davidson contract was terminated because of the latter's default; that they surrendered the contract and that Miller & Lux took actual and physical possession of the land and were in possession and harvesting the crop when dispossessed by the receiver. It is further submitted that the finding of the trial court that the California Farming Company remained in possession is not supported by the evidence.

Appellant's first proposition might well be accepted if the uncontradicted facts supported it, but the trial court found upon conflicting evidence that the vendor had waived the "time of the essence" provisions of the contract; that there was no restoration thereof; and that the attempted restoration, whereby vendees were given thirty days within which to pay almost $46,000 then in default, was unreasonable; and further that the attempted restoration and forfeiture was waived by the vendor. There is ample evidence to support these findings and the further express finding that the vendor waived the attempted forfeiture by further negotiations with the vendees and by accepting from them

an assignment of their vendees' interest in return for vendor's unkept promise to give them a lease on the property; and that vendor wholly failed and refused to carry out its part of the agreement pursuant to which the assignment was made. There is a further finding that the vendor accepted the assignment with knowledge of the grain company's mortgage claims against the crop.

As to the further point of the appellants, there is conflicting evidence in the record as to who was in possession of the property. It cannot be said that the testimony supporting the finding is so slight or so inherently improbable as to be insufficient to create a conflict. The grain crop was in need of no further care at the time of the alleged change of possession. There is testimony that the lessee did some work in connection with the cotton planting and it is undisputed that the lessee was attempting to harvest the grain when the receiver stepped in. The trial court resolved all of these conflicts against the appellant and all parties are bound thereby on appeal.

The judgment can be sustained upon either or both of two theories. First, if Davidson Bros. personally or through their lessee remained in possession, as found by the trial court, they were by authority of *California Delta Farms, Inc.,* v. *Chinese American Farms,* 204 Cal. 524 [269 Pac. 443], and *Grossman* v. *Yip Wing,* 62 Cal. App. 121, 128 [216 Pac. 634], owners of the crop as *bona fide* adverse tenants and hence their crop mortgagee would be entitled to the money in the receiver's hands. On the other hand, if, for the purpose of argument, the findings as to possession cannot be sustained, the appellants are faced with the finding that the vendor's attempted forfeiture was of no effect and was waived by the acceptance of an assignment of the Davidsons' vendees' interest, which they took with knowledge of the outstanding crop mortgage of the grain company.

The provision of the contract making time of the essence thereof and providing that a waiver of any breach should not be deemed a waiver of this term of the contract, as to the performance of other covenants, or of the making of other or future payments, does not alter the situation because there was clearly a waiver of the time requirement and no violation or default of other covenants or failure to

make other payments is made the basis of the attempted restoration and forfeiture. There being ample evidence to sustain the finding that there was a waiver of this term of the agreement, the vendees were entitled to a time sufficiently advanced to give them a reasonable opportunity to make the payments and cure the default. (*Stevinson* v. *Joy*, 164 Cal. 279 [128 Pac. 751]; *City of Los Angeles* v. *Kurtz*, 170 Cal. 344 [149 Pac. 580].)

The judgment is affirmed.

Barnard, P. J., and Jennings, J., concurred.