270 P.2d 442

**PEARCE**

v.

**SHURTZ et al.**

No. 7634.

Supreme Court of Utah.

April 26, 1954.

Dissenting Opinion May 4, 1954.

H. Hartland Halliday, Fred L. Finlinson, Salt Lake City, for appellants.

Rawlings, Wallace, Black, Roberts & Black, Salt Lake City, for respondent.

McDONOUGH, Justice.

Ivan Call sold a ranch to Frank Lewellen giving him a bond for deed and taking in return a promissory note executed by Lewellen. These items were placed in escrow. The bond for deed recited the terms of the agreement and contained a forfeiture clause effective 60 days after Lewellen's failure to comply with certain terms. This forfeiture clause expressly provided that upon default the buyer at seller's election became at once a tenant at will of the seller and the escrow had the right to return the bond for deed, note, abstracts, and contract to the seller. It was also "agreed that time was of the essence of this agreement" and that "it is understood and agreed that if the seller accepts payments from the buyer on this contract other than according to the terms herein mentioned, then by so doing it will in no way alter the terms of the contract as to forfeiture hereinafter mentioned."

Various complex transactions occurred which for all practical purposes are abridged as follows: Lewellen assigned his equity in the bond for deed to Shurtz who was to perform the conditions and assume all payments under such bond, and who assigned one-half of his interest to

Wright. Wright and Shurtz then sold the ranch to Johnson under a Uniform Real Estate Contract. Payments became delinquent under the terms of the bond for deed and two days before the 60 day period of the forfeiture clause had run Call assigned and quitclaimed his interest in the bond for deed, and endorsed Lewellen's promissory note over to the plaintiff Pearce. After the grace period expired plaintiff served notice on Wright, Shurtz, and Johnson declaring them tenants at will and giving them 5 days to vacate the premises. No demand for payment was made upon Lewellen, Wright, Shurtz, or Johnson and no notice was served on Lewellen. Plaintiff brought action in unlawful detainer under Title 104–60–3(2), U.C.A., 1943, against Wright, Shurtz, and Johnson. The lower court entered judgment for the plaintiff. Defendants raise three questions on appeal.

(1) Whether the failure to give notice or make demand upon Lewellen made the action of unlawful detainer premature.

(2) Whether the original bond for deed gave rise to mortgagor-mortgagee relationship.

(3) Whether the acceptance of the delinquent payments constituted a waiver of the forfeiture provision.

These issues are discussed in the order stated.

Appellant contends that since Lewellen was the only person liable on the promissory note demand for payment should have been upon him, that he should have been notified of the forfeiture for default, and that he should have been joined as party defendant in a suit for possession based on the forfeiture. This contention might be sound if the action were other than unlawful detainer. Unlawful detainer, however, is an action to remove a tenant from possession and is primarily against the person in possession. It is not similar to a quiet title action wherein anyone with any interest should be joined. Neither is it similar to an action upon the promissory note. Title 104–60–7, U.C.A., 1943 provides:

"No person other than the tenant of the premises, and subtenant if there is one in the actual occupation of the premises when the action is commenced, need be made a party defendant in the proceeding, nor shall any proceeding abate, nor the plaintiff be nonsuited, for the nonjoinder of any person who might have been made a party defendant; * * *."

This provision is indicative of the nature of the unlawful detainer action and of the fact that failure to serve demand or notice upon Lewellen in this case did not result in the action being premature.

The second question raised on appeal is whether a landlord-tenant rela-

tionship between plaintiff and defendant resulted upon default. Appellant contends that a mortgagor-mortgagee relationship is created where the seller retains title but gives possession to the buyer and takes a promissory note for the payments to be made at the end of which time title to the property will be transferred. Several cases are cited to support this position and we do not reject them. See Marquardt v. Fisher, 135 Or. 256, 295 P. 499, 77 A.L.R. 265 and cases cited and discussed in annotation beginning at page 270 of 77 A.L.R. In a situation where title is held until payment is complete the general conclusion to be drawn is that a conditional sale or a mortgagor-mortgagee relationship exists. The instant contract, however, expressly provided that upon failure of performance of conditions the buyer would "become at once a tenant at will of the seller." This provision was undoubtedly adopted to obtain the benefits of the unlawful detainer statute. Such was the express provision of the contract and this court will not rewrite the agreement. It is not within our province to torture some other meaning out of the bond for deed because of escrow and title retaining provisions. As we stated in Foxley v. Rich, 35 Utah 162, 99 P. 666, 672:

"* * * Where the parties themselves stipulate what the result of a breach of a particular contract shall be, the courts ordinarily have no authority to impose other consequences than those agreed upon. There may be circumstances under which the results would be so inequitable and unjust that a court of equity would be authorized to give relief, but the case in hand presents no such contingency. * * *"

The transaction in Foxley v. Rich, supra, was strikingly like that here. A contract for the sale of land at the agreed price of $3,500 was entered into. Seven notes for $500 each, payable one year apart, were executed by the purchaser. The notes and a deed from the seller were placed in escrow, with an agreement of the parties which provided that upon default of any payment when due, the deed and notes were to be returned to the seller who was entitled to retain, as rental for the land any payments made prior to the default.

In the instant case, the payments stipulated to be made, and evidenced by the escrowed note, in the Call-Lewellen contract amounted to $1,000 per year for 12 years. The trial court found, that the finding is supported by the record, that the reasonable rental value of the land involved was $150 per month. Hence, the provision in the contract for retention by the seller of payments made prior to declaration of forfeiture cannot be held to be a provision for a penalty, but is rather one for reasonable, stipulated, liquidated damages. Christy v. Guild, 101 Utah 313, 121 P.2d 401.

■■ Since Johnson could only obtain what Shurtz could give and Shurtz under the assignment from Lewellen became a tenant at will upon plaintiff's election, we conclude that a landlord-tenant relationship existed at the time notice was served on defendants and that hence Title 104–60–3(2), U.C.A., 1943 was applicable.

■ The third contention made by appellant is that the acceptance of prior delinquent payments constituted a waiver of the forfeiture provision. The contention must be rejected. Appellant is in the curious position of maintaining that his default arose under the contract between himself and Wright and Shurtz and that Lewellen was the only one obligated on the Call-Lewellen contract; at the same time, he insists that the acceptance by Call in 1946 of late payments constituted a waiver of the "time of the essence" clause as to him. The payment of $1,000 due on December 1, 1949, was the first annual payment due under the Wright-Shurtz-Johnson contract and upon expiration of the 60-day grace period, according to the terms of the contract, Johnson, at the election of the sellers, became a tenant at will of Wright and Shurtz. Likewise, upon default of the Call-Lewellen contract, Wright and Shurtz became tenants at will of Pearce, who held the rights of Call under that contract. Even if Johnson knew, which the evidence does not indicate, of the acceptance of late payment by Call, he could not rely upon that acceptance in regard to his own contract.

Appellant's claim that because he acquired the interest of Shurtz after suit was commenced his interest is enlarged, inasmuch as Shurtz did not receive formal notice that the seller intended to enforce the time condition of the prior contract, is without merit. The mere fact that a payment was accepted delinquent in 1946, is not sufficient to constitute a waiver of the condition. Sec. 300, Restatement of Contracts, defines the rule as being:

"Acceptance of defective performance of a condition or promise does not operate as an assent to receive further similar performance except where successive acceptances of such performance justify the belief that performance of that character is satisfactory, and induced thereby the party rendering performance materially changes his position.

"Acceptance of defective installments of performance is insufficient evidence to justify a belief that such performance is satisfactory, unless a reasonable person would infer from successive acceptances that performance of that character was satisfactory. This is a question the answer to which depends on the differing facts of each case."

In the instant case, only one payment out of the three made was accepted late,

and all subsequent payments were made on time. That the late payment was not satisfactory to the seller is evidenced by the fact that he required an additional $50 as consideration for reinstating the contract at that time. There is no evidence that Johnson, the appellant, was misled by this transaction which occurred three years prior to the time when he acquired an interest in the contract and assuredly, he was not led by it into breaching his own contract with Wright and Shurtz. The facts of this case indicate that there was no waiver of the time condition of the contract.

In Christy v. Guild, supra, we recognized the principle that acceptance of delinquent payments may well result in a waiver of the ordinary "time is of the essence" clause since by such conduct the vendor has led the vendee into the belief that the vendor will continue to waive the strict performance of the contract. Such a situation does not here exist, regardless of the effect of the provision of the contract that acceptance of late payments will not constitute a waiver of the rights to payment on specified dates, for the vendee was not misled into such belief by the vendor.

The judgment is affirmed with this modification: that the note of Lewellen held by the plaintiff be surrendered for cancellation. See Foxley v. Rich, supra. The rights of the defendants under the Uniform Real Estate Contract entered into by them are not before us, the cross-complaint of Johnson have been dismissed by him without prejudice.

Costs to respondent.

WOLFE, C. J., and WADE, J., concur.

CROCKETT, J., dissents.

HENRIOD, J., does not participate herein.

CROCKETT, Justice.

I dissent. I believe that no forfeiture of the contract was properly effected.

The essential facts are stated in the main opinion; I add only those that are necessary to the expression of this dissent.

Pearce took the assignment from Call after the 1949 payment was 58 days past due (2 days short of the expiration of the grace period) apparently for the express purpose of forfeiting defendants out of the property. No demand for payment was made during the grace period and Pearce made none. He waited but a few days after the grace period had expired, then gave only one notice, into which he attempted to telescope notice that all payments theretofore made were forfeited, that the defendants were tenants at will, and a demand that they vacate within five days. Based upon this he proceeded in unlawful detainer. Even this one notice was not served upon nor in any way communicated to Lewellen, who

had given the original note for the purchase of the property and upon which he was still liable.

In insisting upon his right to forfeiture of the contract and possession of the property, plaintiff relies on this language in the contract:

" * * * upon failure to make any payments when the same shall become due, or within 60 days thereafter, the Seller shall be released from all obligations in law and equity to convey said property, and the Buyer shall forfeit as liquidated damages all payments which have theretofore been made on this contract, * * * the Buyer becoming at once a tenant at will of the Seller. * * * It is agreed that time is of the essence of this agreement."

The law does not look with favor upon forfeitures.[1] A liberal interpretation should be placed both upon the contractual provisions and the conduct of the parties in relation to them with the view of preventing a forfeiture, if possible.[2] This is all the more so where the summary remedy of possession under unlawful detainer, as well as treble damages, are sought.[3]

The prevailing opinion properly notes, " * * * acceptance of delinquent payments may well result in a waiver of the ordinary 'time is of the essence' clause since by such conduct the vendor has led the vendee into the belief that the vendor will continue to waive the strict performance of the contract." However, it places emphasis on the statement that only one payment was accepted late.

It may well be that ordinarily one payment would not be sufficient to constitute a waiver of the "time is of the essence" provision of a contract. But if we look at the entire picture here, it cannot fairly be said that this is analogous to a situation where only one monthly installment on a contract was paid late. The thousand dollars was a yearly payment, and in that sense should properly be considered as the payments for a full year; therefore, the payments for the entire year of 1946 went delinquent, which constituted one-third of all of the payments made on the contract. Long after the sixty-day grace period had expired, partial payments were made in the following July and September; they were accepted, apparently without objection, which was a recognition by the buyer that the contract was still in force and effect. It would not be unreasonable for the buyer to suppose that he could do the same again, or at least that some demand or notice to indicate that he

1. Howorth v. Mills, 62 Utah 574, 221 P. 165; Munson v. Apartment & Hotel Investment Co., 62 Utah 13, 218 P. 109; Glad Tidings Church of America v. Hinkley, 71 Ariz. 306, 226 P.2d 1016. See Moeller v. Good Hope Farms, 35 Wash.2d 777, 215 P.2d 425.

2. Loftis v. Pacific Mutual Life Insurance Co. of Calif., 38 Utah 532, 114 P. 134; Munson v. Apartment and Hotel Investment Co., supra.

3. See Perkins v. Spencer, Utah, 243 P.2d 446; and Forrester v. Cook, 77 Utah 137, 292 P. 206.

could not do so would be given him before the harsh and arbitrary terms as to forfeiture would be insisted upon. Even though Johnson was not the buyer when this delinquency occurred, plaintiff concedes, as he must, that Johnson, as assignee, was entitled to all of the rights of his assignors, including any right of waiver which had accrued by reason of the conduct of the parties at the time he took the assignment.

The argument that the additional $50 which was paid in 1947 evidences the fact that the late payment was not satisfactory to the seller, is pure conjecture. It is based on neither evidence nor reason: The fact is that the late payments were accepted in July and September before the $50 was paid in the latter part of September.

The plaintiff relies upon the provision of the contract that:

> "* * * if the Seller accepts payments * * * other than according to the terms * * * it will in no way alter the terms of the contract as to forfeiture. * * *"

Waiver of this sort might be considered as somewhat akin to fraud, in the sense that the parties could not contract fraud out of existence, that is, a statement in the contract that fraud did not exist in its formation could not make that so. One could not make a binding condition in a contract that "even if fraudulent, this contract is still binding." If so, all contracts would soon contain such provisions and the way would be left open for all manner of chicanery and deceit. Likewise, if the seller has in fact waived the imposition of the strict terms of the contract (time of the essence) and lulled the buyer into a sense of security in reliance thereon, a waiver existed in fact, and a recital in the contract that there is no waiver would not change that fact. This principle is well recognized; Corbin writes:

> "* * * a provision that an express condition of a promise or promises in the contract can not be eliminated by waiver, or by conduct constituting an estoppel, is wholly ineffective. The promisor still has the power to waive the condition, or by his conduct to estop himself from insisting upon it, to the same extent that he would have had this power if there had been no such provision."[4]

I think that the conduct of the sellers constituted a waiver of the "time is of the essence" provision, notwithstanding the above quoted provision of the contract which appears to be a covenant against such result.[5] For the seller to in effect "lie in wait" by permitting the entire sixty-day grace period to go by without making any demand or giving any notice whatsoever, and then forthwith to give notice that the forfeiture was being strictly insisted

4. 3 Corbin, Contracts, Sec. 763 (1951).

5. See Gonzales v. Hirose, 33 Cal.2nd 213, 200 P.2d 793.

upon, amounts to such a course of conduct as to be high handed and arbitrary in the extreme and which no court of equity should condone or enforce. After the waiver of the "time is of the essence" provision, it could not be reinstated without giving the other party notice and a reasonable opportunity to comply with his contractual obligations,[6] which was not done here.

There is a further reason why the unlawful detainer action is not properly grounded. Plaintiff did not take the two essential procedural step necessary: first, to effect a forfeiture in order to put defendant into the status of being a tenant at will, and second, to treat him as such by giving him notice to vacate within five days. Plaintiff is attempting to interpret and apply the language of the contract in such a manner that the forfeiture provision would be self-executing; that is, after default in making a payment, plus the expiration of the grace period, the seller's obligations would automatically expire and the defendant become a tenant at will. However, it must be remembered that the buyer only became a tenant at will at the option of the seller. It necessarily follows that the seller must make such election, and notify the buyer thereof before the latter would actually become a tenant at will. This seems necessarily so. If after delinquency, the buyer had offered payment, the seller could either elect to accept it, in which instance the contract would remain in full force and effect; or he could elect to refuse it. But before the seller makes such election, it is obvious that the buyer's status is uncertain; and that he was not actually a tenant at will until after such election by the seller and notice thereof. Until the buyer had been put in the status of tenant at will, he was not in the position of being amenable to the summary ejectment provided in the unlawful detainer statute.

It may be suggested that the distinction that the seller could not declare the buyer a tenant at will and treat him as one at the same instant, is technical. The answer to this is found in the fact that unlawful detainer itself is a summary remedy and that one who uses it must strictly and technically comply with the requirements of the law. Where the seller is attempting to assert the arbitrary remedy of both forfeiture and unlawful detainer, he should not be aided by allowing shortcuts. Even though no particular advantage to the buyer seems apparent, he is still entitled to occupy the status of a purchaser until the election is made and his rights are forfeited. And until he is actually a tenant at will he cannot be treated as such. He may be able to make a tender, claim a waiver, or in some

6.  McBride v. Stewart, 68 Utah 12, 249 P. 114; Glad Tidings Church of America v. Hinckley, supra; Scott v. California Farming Co. et al., 4 Cal.App.2d 232, 40 P.2d 850; Alfrey v. Richardson, 204 Okl. 473, 231 P.2d 363. See Columbia Airways v. Stevens, 80 Utah 215, 14 P.2d 984; Munson v. Apartment & Hotel Investment Co., supra, and Kohler v. Lundberg, 54 Utah 339, 186 P. 590.

practical way extricate himself from his unfortunate situation. He is entitled to the opportunity to try to do so.

I believe that no forfeiture having been properly effected, the artificial relationship of tenancy at will was not created, and the action of unlawful detainer should be dismissed.