473 P.2d 905

LYMAN GRAZING ASSOCIATION, a corporation, Plaintiff and Appellant,

v.

George W. SMITH, Eleanor N. Smith and Keith Smith, Defendants, Third-Party Plaintiffs and Respondents,

v.

Charles TRIPP, Third-Party Defendant and Respondent.

No. 11849.

Supreme Court of Utah.

July 31, 1970.

E. J. Skeen, of Skeen & Skeen, Salt Lake City, for appellant.

Milton V. Backman, of Backman, Backman & Clark, Salt Lake City, for respondents.

**CALLISTER, Justice:**

Plaintiff initiated this action to quiet title to its ownership of two irrigation ditches located in Summit County. Plaintiff asserted that it was the owner of certain parcels of land together with an irrigation ditch known as the New Hickey Ditch, which diverts water from the west fork of Beaver Creek and then runs northerly to its confluence with the Parley Madsen Ditch. Plaintiff alleged that the defendants, the Smiths, claimed some interest in these ditches, which constituted a cloud on plaintiff's title, and prayed that the court quiet its title to these ditches and enjoin the defendants from using them.

Smiths filed an answer and counterclaim, wherein they alleged that in 1962 they had entered into an oral agreement with one Lewis H. (Dude) Larsen, a contract purchaser of the property, to relocate their established easement, known as the Carter Ditch. Defendants asserted that during the year 1962 both Larsen, the equitable owner, and Joseph Hickey, the legal owner, deemed that it was in the best interests of all the parties concerned to relocate defendants' easement, the old Carter Ditch, and for defendants to transport their water through another ditch. Defendants pleaded that in 1963 they made an application for a change of point of diversion with the State Engineer, which was granted. Defendants alleged that plaintiff acquired the subject property sub-

sequent to the foregoing events and that the conveyance to plaintiff specifically provided that the premises conveyed were subject to any ditch now existing across the premises, which in fact excluded defendants' rights. Defendants pleaded that by force of the provisions in the conveyance to plaintiff, plaintiff was estopped from asserting its claim. Defendants alleged that plaintiff had interfered with their rights and that they had sustained damages therefrom. Defendants' prayer for relief included a claim for a restraining order and for damages.

Plaintiff, in a responsive pleading, asserted the Statute of Frauds, Sec. 25–5–1, U.C.A.1953, and claimed that the oral agreement for relocation was a violation thereof and unenforceable.

The trial court granted judgment to the defendants. The court determined that the Smiths had an easement in the Hickey Ditch and its extensions running through the property of plaintiff to transport the water allocated to the Smiths by the State Engineer without interruption by plaintiff. Smiths were awarded damages in the amount of $1400 and their costs.

On appeal, Lyman Grazing asks this court to reverse the judgment and remand the cause with directions to the trial court to quiet title to the ditches in the plaintiff and restrain defendants from the use thereof.

The Smiths are the owners of certain ranch property in the State of Wyoming; they have certain water rights in the west fork of Beaver Creek. They transported the water decreed to them through the Carter Ditch, which was located on lands owned by Joe C. Hickey. The Carter Ditch ran down through meadows of the Hickey property in an area where there was excessive accumulation of water caused by beaver dams. The flooding of the meadow area was a problem to both the Smiths and Hickey. In 1961, Hickey orally consented to a change in the Carter Ditch with Smith, although at that time no definite location was designated. In June of 1961, Hickey informed Smith that he had sold the property to Larsen and that he had informed Larsen that he had previously consented to the relocation of the ditch.

In the early summer of 1962, Larsen also consented to the relocation of the ditch, acknowledging that the present location down through the meadows was a problem and a relocation to higher ground would be better. Larsen indicated to Smith the area where he should relocate the ditch, i. e., Smith should utilize an old existing ditch part of the way and construct the remainder following old fence lines. As consideration for his consent to relocate the ditch Larsen had Smith perform certain ditch work including cleaning and rebuilding. Smith further agreed to abandon the upper portion of the old Carter Ditch.

Smith testified that after he had constructed the new channel, Larsen, in fact, filled in part of the old ditch.

Smith testified that he performed most of the ditch work which constituted the consideration for Larsen's consent to relocate the Smith easement in 1962. Most of the work to build the new route was performed in 1963, the year the Smiths made their application to change their point of diversion with the State Engineer. After due notice of processing, the application was granted on April 3, 1964, and thereafter the water was transported at all times through the ditch as relocated.

Larsen did not complete the contract to purchase the property and quitclaimed the equitable interest to Beehive State Bank. Beehive entered into an agreement to sell the property to plaintiff. On April 30, 1965, Hickey conveyed by warranty deed the fee title to Beehive State Bank; contained therein was a provision that the conveyance was subject to:

(b) Any liens or encumbrances arising since May 26, 1961, as a result of the actions of Grantee or of the Buyers under that certain Sales Agreement dated May 26, 1961, executed by Grantors and covering the subject premises *and any easements* or rights-of-way *for* roads, *ditches,* canals, pole lines, transmission lines or like facilities *granted by said Buyers or by Grantee since May 26, 1961.* [Emphasis added.]

Beehive State Bank conveyed the property to plaintiff; its deed contained a provision that the grantee took the property subject to easements for ditches and canals existing over and across the property.

Based on the foregoing facts, the trial court concluded that plaintiff's predecessor in interest, Larsen, occupied a status that enabled him to transact business with defendants relative to the Hickey Ditch and its extension; that Larsen and Smith made an arrangement involving mutual valuable consideration, whereby Smith abandoned the old Carter Ditch and Larsen consented to the enlargement and use of the Hickey Ditch by Smiths; that the relocation and enlargement of the Hickey Ditch was an accomplished and visible fact at the time plaintiff acquired its interest in the land through which the ditches proceed; and that plaintiff's prayer for exclusive quiet title should be denied.

On appeal, plaintiff asserts that a permanent right to use a ditch is an interest in real property and cannot be transferred by parol, Section 25–5–1, U.C.A.1953.

In Tripp v. Bagley [1] this court stated:

The law is also well settled that, when an easement has once been established, its location may be changed by an exe-

1. 74 Utah 57, 75–76, 276 P. 912 (1929).

cuted oral agreement between the owner of the servient estate and the owner of the dominant estate. [Citation omitted.] The consent of the owner of the servient estate to a change in the location of an easement may be implied from acquiescence. [Citations omitted.] When the location of an easement has been changed by an agreement, either express or implied, between the owner of the dominant estate and the owner of the servient estate, such location cannot be again changed without the mutual consent of such owners, * * *.

A similar view is expressed in 80 A.L.R. 2d 743, 751–752, Anno: Relocation of Easements, wherein it is stated:

> * * * There is, for example, authority supporting the conclusion that an agreement between dominant and servient estate owners to a change in the route of an easement will be enforced, even though oral, where the agreement has been performed by actual use of the new route.

█ Plaintiff contends that the contract purchaser, Larsen, did not have the authority to consent to the permanent relocation of the easement.

> * * * where title is held until payment is complete the general conclusion

to be drawn is that a conditional sale or a mortgagor-mortgagee relationship exists. * * *[2]

█ Larsen's possessory interest and equitable title to the property at the time of the relocation made his consent necessary, but it should be conceded that also the mortgagee and fee titleholder, Hickey, must consent. However, it is competent for the parties to change the location of an established easement by mutual consent, and such consent may be *implied* from the acts and acquiescence of the parties.[3] Although the actual negotiations for a change in the location of the ditch were conducted by Larsen, the facts of this case indicate that he was acting under the authorization of Hickey and for the benefit of the servient estate. Hickey's consent may further be implied from his failure to protest when Smith's application for a change of point of diversion was advertised and Hickey's express provision in his deed subjecting his conveyance to any easement granted by Larsen.

Plaintiff asserts that the trial court erred by admitting the testimony of Larsen and Smith concerning their parol agreement for relocation of the easement because such statements constituted hearsay evidence.

2. Pearce v. Shurtz, 2 Utah 2d 124, 127, 270 P.2d 442, 444 (1954).
3. McCarty v. Walton, 212 Cal.App.2d 39, 27 Cal.Rptr. 792, 796 (1963); Johnstone v. Bettencourt, 195 Cal.App.2d 538, 16 Cal.Rptr. 6, 9 (1961), and Scott v. Weinheimer, 140 Mont. 554, 374 P.2d 91, 96 (1962).

**448**

The declarations of a third person are admissible against a party whenever privity of estate exists between the declarant and the party, the term "privity of estate" generally denoting in this respect a succession in rights. The declarations of the privy in estate are deemed in law to be the declarations of the party himself. Thus, whenever a party claims under, or in the interest or right of, another, the declarations of such other person pertaining to the subject of the claim are admissible against him. As a general rule, the declarations of a former owner against his interest are admissible against the successor in interest. * * *[4]

■ The record in the instant action clearly establishes that plaintiff was a successor in interest to Larsen's equitable interests, and that the declarations of Larsen and Hickey were admissible.

Plaintiff asserts that the trial court erred by awarding damages to defendants. The trial court in its findings of fact determined that plaintiff had interfered with defendants' use of the ditches during 1966 and 1967 and that it was necessary for Smiths to procure a restraining order. The court awarded Smiths, as damages, their attorney's fees for $700, and litigation expenses of $50 for telephone calls, and $150 for traveling expenses for trips from Lonetree, Wyoming, to Salt Lake City to attend hearings and to consult attorneys.

It is a well-established rule that a court, although awarding affirmative injunctive relief to a plaintiff or complainant, will not award attorney's fees in the absence of a showing of such fraud, malice, or wantonness as would authorize an award of punitive damages * * *[5]

■ In accordance with the foregoing rule, the record does not support the award of attorney's fees and litigation expenses, and the judgment of the trial court is so modified. However, the award of damages of $500 to defendants which represents their expenses in reopening the ditches which plaintiff obstructed on several occasions is affirmed.

Plaintiff has asserted several other tenuous points on appeal; they are without merit and would unduly lengthen this opinion. The judgment of the trial court is affirmed except for the $900 reduction in damages. Costs are awarded to defendants.

---

4. 29 Am.Jur.2d, Evidence, Sec. 659, p. 710; also see Matusik v. Large, Nev., 452 P.2d 457, 459 (1969); Pearson v. Mullins, Okl., 369 P.2d 825, 829 (1962); Katnig v. Johnson, Okl., 383 P.2d 195, 200, 201 (1963); Wright v. Best, 19 Cal.2d 368, 121 P.2d 702, 709 (1942).

5. 89 A.L.R. 1093, 1094, Anno.—Attorneys' Fee in Injunction Suit; also see American Fire Protection Service v. Williams, 171 Cal.App.2d 397, 340 P.2d 644 (1959); Myers v. Strauss, 171 Kan. 91, 229 P.2d 774 (1951).

CROCKETT, C. J., and TUCKETT and ELLETT, JJ., concur.

HENRIOD, Justice (dissenting).

I respectfully dissent, for the reason that the main opinion erroneously sanctions a transfer of an interest in real property by the use of objected-to hearsay, parol evidence,—all in violation of the Statute of Frauds requiring a written conveyance subscribed by a grantor.[1]

About the first 20% of the main opinion is devoted to facts *claimed* by defendant to be accurate and such as to bind the plaintiff to the findings, conclusions and judgment of the trial court. This recitation in the opinion is disarming because of its implications that such facts are accurate and hence defendant's position is sound. The balance of the opinion is simply a purported recital of what it says the record *shows* the facts to be, plus an application of legal principles to such related facts as a sort of ratio decidendi for the main opinion's ultimate conclusion affirming the trial court.

The difficulty is the fact that the main opinion is not quite accurate as to some of the facts, states the principles it espouses only to divorce itself from them either by ignoring or hurdling them, or by citation of authorities that are not applicable under the true facts of this case.

When the main opinion commences stating what the facts are rather than what defendant claims them to be, it errs in the very first paragraph of its recitation, when it says, "The flooding of the meadow area was a problem to both the Smiths [defendants] and Hickey." There is no evidence whatever that it was any problem to *Hickey*, except by way of self-serving hearsay repeated by defendant Smith. The main opinion continues by saying "In 1961, Hickey orally consented to a change in the Carter Ditch with Smith." The only possible way the main opinion could say this as a controlling fact, is by the employment of a self-serving statement by the defendant Smith that Hickey had so consented. It is disarming to a reader for this court to recite such consent as an established fact without supplementing it with the true fact that it was based on hearsay to which a timely objection was made, thus rendering it inadmissible in evidence. This bit of self-serving, objected-to, inadmissible evidence, really is the backbone of the defendant's entire contention, and the entire basis for the main opinion's conclusion that a transfer of a real property interest, without a subscribed written instrument, can be effected through hearsay and parol evidence of the most undependable, unprobative type. Without Hickey's presence and ac-

1. Title 25–5–1, Utah Code Annotated 1953: "No * * * interest in real property * * * shall be created, [or] granted * * * otherwise than * * * by deed or conveyance in writing subscribed by the party creating [or] granting * * the same, * * *."

tual testimony in this case, Smiths' theory and this court's decision are duds. Hickey was not a witness in this case. Hickey's words are not in this record at all. His frame of mind, or consent to a conveyance of real property are here only in the mind and consent of a self-serving litigant, who, so far as this record is concerned, never sought nor saw the signature of the only person who could have created an interest in his own land favorable to a complete stranger to his title. Not even Hickey's conditional buyer under a written real estate contract had the inclination or fortitude to attempt an effective creation of a right in Smith by placing *his* signature to a writing that might be suggestive of such an intent.

The main opinion continues to state without any qualifications whatever that "In June of 1961, Hickey informed Smith that he had sold the property to Larsen and that he had informed Larsen that he had previously consented to the relocation of the ditch." This gratuity should be tempered by saying this assertion was made by the *defendant,* without any showing of any kind who was present, where the Hickey statement was made, and the circumstances surrounding it. It is submitted that for this court to accept as gospel any alleged statement of Hickey made in the presence only of Smith, the defendant, and the reporter thereof, without any chance to probe its authenticity, or any apparent regard for

solid proof, is to depart completely from the nice things we have said about the sanctity and the necessity for stability of land titles, the protection of property rights against unwritten, unrecorded claims, the profound wisdom of our forebears in passing farsighted legislation requiring documentary protection against the interested volunteer, the gun toter, the application of the hearsay rule, etc., ad infinitum.

The main opinion continues with a recitation of what Larsen and Smith did and said about the ditches, what they agreed amongst themselves, and what Smith did in digging ditches, etc. Smith is no party to the title of Hickey's property. Larsen had no right whatever to sell easements in the property,—so all that the main opinion says about Smith and Larsen is but window dressing and not binding either on the fee title or Hickey, both conspicuously absent and completely foreign to the strange decree of the trial court and the stranger compounding thereof by this court's affirmance.

Perhaps the most unusual part of the main opinion is its quotation of a provision of the deed given to the bank by Hickey in 1965, wherein the conveyance was made subject to any easements or rights of way for roads, ditches, canals, pole lines, transmission lines or like facilities granted by *Hickey's buyer or* by *Hickey's grantee* since May 26, 1961, as justification for the main opinion's conclusion that Hickey was

a party to the grant of an easement of any kind. A careful reading of that provision seems clearly to indicate that Hickey personally did not consent to any easement or the easement contended for in the opinion. It says just the opposite and eliminates any other interpretation of his actions by carefully saying the conveyance was subject,— not to any encumbrances resulting from any action of his,—but only "as a result of the actions of *Grantee* [the Bank] *or* of the *Buyers* [Larsens] *under that certain Sales Agreement dated May 26, 1961,"*— the date Hickey conditionally sold to Larsen. This is not *hearsay*. This is a *writing,* and seems to deny expressly and specifically any grant of an easement as a result of anything done or said by Hickey.

The trial court made a rather novel finding. It said "Because of the excessive water * * * *Larsens* and *Smiths* decided it would be to the best interests of *both* that the ditch be relocated." This, of course, has nothing to do with Hickey or this case. As a matter of fact, not only was there no admissible evidence that Hickey was any party to a conveyance, oral or written, but Hickey by the provision he inserted in his deed to the bank, actually disclaimed any such intention, as pointed out supra.

One wonders what this court's position would be if, under identical circumstances, this case was concerned, not with the creation or grant of an easement for transportation of water, Larsen orally had agreed or attempted to convey half of Hickey's land to Smith for half of Smith's adjoining tract.

A case that quite appropriately reflects the observations of this dissent, and which states reasons that should be controlling in the instant case, is that of Cook v. Rigney, 113 Mont. 198, 126 P.2d 325 (1942), which see.